IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PARALLEL NETWORKS LICENSING, LLC, <br><br> Plaintiff, <br><br> v. <br><br> MICROSOFT CORPORATION, <br><br> Defendants. | Civil Action No. 13-2073(KAJ) <br><br> JURY TRIAL DEMANDED <br> **FILED UNDER SEAL** |

## MEMORANDUM OPINION

Adam W. Poff, Esq., Pilar G. Kraman, Esq., Young Conaway Stargatt & Taylor, 1000 N. King Street, Wilmington, DE 19801, *Counsel for Plaintiffs*
    Of Counsel:    Douglas A. Cawley, Esq., Christopher T. Bovenkamp, Esq., Eric S. Hansen, Esq., Avery R. Williams, Esq., Justin W. Allen, Esq., McKool Smith, PC, 300 Crescent Court – Ste, 1500, Dallas, TX 75201
                Angela M. Vorpahl, Esq., McKool Smith, PC, 1 Bryant Park – 47th Fl., New York, NY 10036
                John B. Campbell, Esq., Leah Bhimani Buratti, Esq., Kevin P. Hess, Esq., McKool Smith, PC, 300 W. 6th Street – Ste. 1700, Austin, TX 78701

Martina Tyreus Hufnal, Esq., Nitika Gupta, Esq., Ronald P. Golden, III, Esq., Fish & Richardson PC, 222 Delaware Avenue, 17th Fl., Wilmington, DE 19801
Juanita R. Brooks, Esq., Jason W. Wolff, Esq., Joanna M. Fuller, Esq., Fish & Richardson PC, 12390 El Camino Real, San Diego, CA 92130
Stephen A. Marshall, Esq., Fish & Richardson PC, 1425 K Street, N.W., 11th Fl., Washington, DC 20005, *Counsel for Defendants*

February 22, 2017
Wilmington, Delaware



JORDAN, Circuit Judge sitting by designation

## I. Background

I have before me in this patent infringement case two motions: Microsoft's motion for summary judgment to reject Parallel Networks' infringement theories (Docket Item ("D.I.") 287), and Parallel Networks' motion for summary judgment to reject Microsoft's invalidity theories (D.I. 292). For the reasons that follow, and after considering the briefing and oral argument presented by counsel, I will deny Parallel Networks' motion and will grant-in-part and deny-in-part Microsoft's motion.

Parallel Networks filed this action on December 20, 2013, alleging that Microsoft infringed U.S. Patent Nos. 5,894,554 ("the '554 patent") and 6,415,335 ("the '335 patent"). (D.I. 1.) The '554 patent was filed on April 23, 1996, and issued on April 13, 1999. On July 24, 2012, the PTO issued an ex parte reexamination certificate cancelling the first 11 claims of the '554 patent and adding new claims 12-49. (*See* Case No. 1:13-cv-2072 D.I. 278 at A21.)[1] The '554 patent generally discloses methods for load-balancing dynamic web requests across multiple page-servers in an Internet based system.

The '335 patent was filed on January 19, 1999 and issued on July 2, 2002. On July 17, 2012, the PTO issued an ex parte reexamination certificate cancelling the first 29

---

[1] On October 2, 2012, the PTO issued a certificate of correction deleting claims 12-49 and replacing them with a new set of claims 12-49. (Case No. 1:13-cv-2072 D.I. 278 at A15.)

2

claims and adding new claims 30-85. (Case No. 1:13-cv-2072 D.I. 278 at A46.)[2] It shares a specification with the '554 patent. (*See id.*)

Parallel Networks accuses Microsoft of infringing, both directly and indirectly, six independent claims and 12 dependent claims of the patents-in-suit. (D.I. 288 at 9 n.4.) The asserted claims come in two flavors: "method" claims, which disclose a "method for managing a dynamic Web page generation request to a Web server," and "machine readable medium" claims, which disclose "a machine readable medium having stored thereon data representing sequences of instructions, which when executed by a computer system, cause said computer system to perform the steps" of the method claims.

Claim 12 of the '554 patent is representative:

> 12. A computer-implemented method for managing a dynamic Web page generation request to a Web server, said computer-implemented method comprising the steps of:
>
> Routing said request from said Web server to a selected page server, said selected page server receiving said request and releasing said Web server to process other requests, wherein said routing step further includes the steps of intercepting said request at said Web server, routing said request from said Web server to a dispatcher, and dispatching, by said dispatcher, said request to said selected page server;
> Processing said request, said processing being performed by said selected page server while said Web server concurrently processes said other requests; and
> Dynamically generating a Web page by said selected page server in response to said request, said Web page including data dynamically retrieved from one or more data sources; and
> wherein dispatching includes:

---

[2] On September 11, 2012, the PTO issued a certificate of correction deleting claims 30-85 and replacing them with a new set of claims 30-85. (Case No. 1:13-cv-2072 D.I. 278 at A37.)

3

examining said request to make a selection of which page server should process said request from among a plurality of page servers that can each generate said Web page requested by said request;

selecting one of said plurality of page servers to dynamically generate said Web page;

wherein said selection is based on examining dynamic information regarding a load associated with each of said plurality of page servers; and

sending said request to said selected page server based on said examination.

('554 patent.)

## II. Legal Standards

Summary judgment is proper only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986); *Rockwell Int'l Corp. v. United States*, 147 F.3d 1358, 1362 (Fed. Cir. 1998). "A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Schering Corp. v. Geneva Pharm., Inc.*, 339 F.3d 1373, 1381 (Fed. Cir. 2003) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) (1968)). The court will "view the evidence in a light most favorable to the non-movant, and draw all reasonable inferences in its favor." *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1045 (Fed. Cir. 2001). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary

4

judgment; there must be enough evidence to enable a reasonable jury to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III. Microsoft's Motion for Summary Judgment of Non-Infringement

Parallel Networks offers both direct and indirect infringement theories. It argues that Microsoft directly infringed the asserted claims by using the accused products[3] to host "microsoft.com," to operate Azure Web Apps, and to operate Bing & MSN, as well as by selling the accused products to others. (D.I. 312 at 3.) Parallel Networks also argues that Microsoft is liable for indirect infringement on theories of induced infringement and contributory infringement. (*Id.* at 16 n.4.)

Microsoft filed a motion for summary judgment asking the Court to reject Parallel Networks' infringement theories. With respect to direct infringement, Microsoft argues that it is entitled to summary judgment because Parallel Networks has failed to show that the accused products satisfy each limitation of the asserted claims. With respect to indirect infringement, Microsoft argues that it is entitled to summary judgment because Parallel Networks has failed to show that any third parties used the accused products in an infringing manner. For the reasons that follow, I will deny Microsoft's motion with

---

[3] The accused products include (1) Windows Server, when running with Internet Information Services (IIS), Application Request Routing (ARR), and URL Rewrite, and (2) SharePoint 2013, when used with Request Manager. (D.I. 312 at 3.)

respect to direct infringement, but will grant the motion with respect to indirect infringement.

## A.  Direct Infringement

A party directly infringes a patent if it "makes, uses, offers to sell, or sells" the patented invention without permission. 35 U.S.C. § 271(a). In order to prove infringement, a plaintiff must show that the accused product meets each limitation of the asserted claims. *See Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 443 (2007); *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1252 n.2 (Fed. Cir. 2000).

### 1.  *Single Request*

Microsoft points out that the asserted claims are limited to a *single* web request, and argues that the accused products do not infringe because they necessarily involve *multiple* web requests. That argument is based on briefing that took place during the IPR that Microsoft initiated.[4] According to Microsoft, during the IPR, Parallel Networks disclaimed subject matter upon which it now relies to prove infringement. Microsoft had argued at the IPR that the asserted claims were anticipated by a 1995 document that described a "Scalable Web Server" (SWEB). (D.I. 289 Ex. 4 at 10.) Parallel Networks responded by distinguishing SWEB based on the asserted claims "requir[ing] a *single dynamic Web page generation request* to be received, intercepted, routed, and processed,"

---

[4] "On December 23, 2014 ... Microsoft ... requested an *inter partes* review of claims 12-19, 32, 34, 46, and 48 of the '554 patent .... On the same date, Microsoft Corporation filed a separate, but substantially similar, Petition challenging claims 12, 20-31, 33, 35-45, 47 and 49 of the '554 patent." (D.I. 313 Ex. 1 at 2.) On July 15, 2015, the PTAB granted Microsoft's petition. (*See* D.I. 289 Ex. 2.)

while SWEB necessarily involved multiple requests. (D.I. 289 Ex. 6 at 20.) Parallel Networks argued:

> SWEB 95's use of URL Redirection means that more than one request will necessarily be required .... SWEB 95 states that an HTTP request is sent from the Web client to the SWEB server. ... [T]he original request is re-written and returned ... to the Web client that originally made the request. Figure 6 of SWEB 95 shows "r" going to the alleged Web server S0 and something different—"r′"—coming back....
> After the new URL r′ ... is received by the Web client from S0, the Web client must go through the entire process of making another HTTP request. ... SWEB 95 identified the need to make a second request as a potential disadvantage of the described system: "The primary disadvantage of URL redirection in practice is the added overhead of an *additional connect/pass request/parse/respond cycle* after the redirection occurs." ...
> SWEB95 teaches that what gets sent from the SWEB server S0 is not the original request. ... [W]hat gets returned as "r′=http://s1/myfile"—something clearly different from the original request r—is an HTTP response. ...
> Each independent claim also requires "said selected page server receiving *said request*," but HTTP request "r" or "x" is never received by the alleged page server. ... [T]he alleged page server S1 receives a new, second HTTP request generated by the Web client after receiving a response from the alleged Web server S0. ... The alleged page server receives a new, second HTTP request. ... Because of its use of URL redirection—necessarily requiring the sending by the Web client of two, different requests—SWEB 95 does not anticipate any of the independent claims of the '335 patent.

(D.I. 289 Ex. 6 at 22-24 (internal citations and footnotes omitted).)

In Microsoft's view, the centerpiece of Parallel Networks' attempt to distinguish SWEB was the fact that the original web request, "r," was modified and rewritten before it was sent to the page server. (D.I. 288 at 20-21.) Microsoft argues that that fact also distinguishes the accused products from the asserted claims (*id.* at 21-22 (pointing out that the accused products receive a web request and modify the request before sending it

7

to its destination)), and that Parallel Networks should be estopped from presenting an interpretation of the claims that is at odds with what it told the PTAB. (*Id.* at 21.)

In response, Parallel Networks argues that Microsoft has mischaracterized its IPR arguments. It says that it distinguished the asserted claims from SWEB based on SWEB's **"forc[ing] the Web client to start the process of requesting a Web page over again."** (D.I. 312 at 9 (quoting D.I. 313 Ex. 9 at 22).)

"To invoke argument-based estoppel ... 'the prosecution history must evince a clear and unmistakable surrender of subject matter.'" *Conoco, Inc. v. Energy & Envt'l Intern., LC*, 460 F.3d 1349, 1364 (Fed. Cir. 2006). "The relevant inquiry is whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter." *Id.* (quoting *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998), *overruled on other grounds, Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335 (Fed. Cir. 2015)); *see also* Robert L. Harmon et al., *Patents and the Federal Circuit* 636 (2015). Parallel Networks' arguments to the PTAB do not "clearly and unmistakably" indicate that the uniqueness of a request depends on the content of the request. Instead, as Parallel Networks points out, its primary argument, and the argument on which the PTAB relied, was that requests are defined from the perspective of the client. (*See* D.I. 289 Ex. 6 at 20, 22-24; Ex. 7 at 16-17.) There is not enough contradiction here to warrant estoppel.

As an alternative to its estoppel argument, Microsoft contends that Parallel Networks has failed to offer evidence showing that the accused products use only one request. (D.I. 332 at 4-5.) This is incorrect. Parallel Networks identifies several sources

8

of evidence – including some produced by Microsoft – that would allow a reasonable jury to conclude that the accused products rely on a single request. (*See* D.I. 313 Ex. 2 at 15-17 (explaining that the URL Rewrite module "sends the request down the line ... where it can be routed to a specific server for processing"); Ex. 7 at 58 (explaining that non-substantive modifications of a request do not result in a new request); Ex. 10 (explaining that ARR "forwards HTTP requests"); Ex. 3 at 4 (explaining that HTTP.sys "*passes* the request to the server application" (emphasis added)).) While Parallel Networks' evidence is by no means unrefuted (*see* D.I. 313 Ex. 13 at 101-06 ("ARR will make ... its own HTTP request to another server....")), it is sufficient to withstand Microsoft's motion for summary judgment.

### 2. *Intercepting*

Microsoft's arguments regarding the "intercepting" limitation are best understood as claim construction arguments. The parties originally agreed that "intercepting said request" means "diverting the handling of said request before the request is processed by the Web server/HTTP-compliant device." (D.I. 288 at 23.) In its motion for summary judgment, Microsoft seeks to further limit the term and argues that, in order for a request to be intercepted, it must be diverted from the Web server before *any* handling is done. (*Id.* at 23-25.)[5] Microsoft does not offer any analysis to support its interpretation.

---

[5] The parties agree that web servers associated with the accused products perform at least some handling of incoming requests before the requests are sent to the dispatcher. (*See* D.I. 288 at 24 (Microsoft); D.I. 312 at 14-15 (Parallel Networks).) This means that if the Court were to adopt Microsoft's proposed construction, there would be no infringement.

9

Parallel Networks, however, argues that Microsoft's proposed construction is precluded by Figure 5 of the '554 patent, which shows that in a preferred embodiment, at least some processing takes place before the request is intercepted. (*See* '554 patent at Fig. 5, 2:50-53.) I agree. Because "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct," *see On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1138 (Fed. Cir. 2004) (internal quotation marks omitted), Microsoft's new construction is untenable,[6] and I will deny Microsoft's motion for summary judgment with respect to the "intercepting" limitation.

## B.  Indirect Infringement

Parallel Networks alleges that Microsoft is liable for indirect infringement. In order to prove indirect infringement, a patent owner must show that there was an underlying act of direct infringement by a third party, that the defendant knew the acts were infringing, and either that the accused product was especially made or adapted for an infringing use or that the infringer took active steps to encourage infringement. *See* 35 U.S.C. § 271; *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010). Microsoft argues, and I agree, that Parallel Networks has failed to produce evidence sufficient to show an act of direct infringement by a third party.

Parallel Networks offers two theories to support its theory of indirect infringement. First, it says that internal Dell documents and specifications show that one of Microsoft's

---

[6] In its reply brief, Microsoft asserts that its interpretation is supported by Figure 4 of the '554 patent. Figure 4, however, does not speak to how much processing, if any, is performed on the web request before it is sent to the dispatcher. (*See* D.I. 332 at 7.)

clients, Dell, used the accused products in an infringing manner. Second, it relies on a survey to show that a large number of unidentified Microsoft clients use the accused products in an infringing manner.

Microsoft challenges both theories. With respect to Dell, Microsoft argues that Parallel Networks failed to show that Dell's network satisfies each claim limitation. (D.I. 288 at 26-27.) Microsoft especially emphasizes that there is no evidence on which a reasonable jury could rely to conclude that Dell's use of the accused products satisfies the "concurrently processing" limitation of the asserted claims.[7] (*Id.*)

In response, Parallel Networks points to its expert report, prepared by Dr. Mark Jones, and argues that Dr. Jones's analysis shows that Dell's system satisfies each of the limitations in the asserted claims. (D.I. 312 at 21-22.) Not so. While Dr. Jones indicates that "Dell.com makes use of Microsoft's ARR" and that "Dell uses ARR in conjunction with Dell.com," there is no indication that Dell uses ARR to serve dynamic web pages (as opposed to other kinds of content), or that Dell's system satisfies the "concurrently processing" limitation, as is required by the asserted claims. (D.I. 313 Ex. 2 at 157-59.) Given the lack of detail in Dr. Jones's report, I will grant Microsoft's motion for summary judgment of non-infringement with respect to Dell's use of the accused products.

---

[7] The "concurrently processing limitation" is found in each of the asserted independent claims, as well as the claims that depend from them. Representative claim 12 contains the pertinent language: "processing said request, said processing being performed by said selected page server while said Web server concurrently processes said other requests." ('554 patent.)

11

Parallel Networks' second theory of indirect infringement relies on a survey conducted by Dr. Bruce Isaacson. Microsoft argues that the Isaacson survey is unreliable and should be excluded pursuant to the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). For the reasons stated in my separately filed opinion on the *Daubert* motion, I agree with Microsoft and conclude that the Isaacson survey is unreliable and inadmissible. Accordingly, I will grant Microsoft's motion for summary judgment of non-infringement with respect to the indirect infringement allegations arising from the Isaacson Survey.

## IV. Parallel Networks' Motion for Summary Judgment of Invalidity

Microsoft contends that the asserted claims are rendered obvious by MSN 1.0, a client-server system that was released several months before the priority date of the patents-in-suit. Parallel Networks disagrees and seeks a summary judgment order rejecting Microsoft's obviousness defense.[8]

To determine whether a patented invention is obvious, courts consider "(1) the scope and content of the prior art; (2) differences between the prior art and the claims at issue; (3) the level of ordinary skill in the pertinent art; and (4) secondary considerations of nonobviousness." *Redline Detection, LLC v. Star Envirotech, LLC*, 811 F.3d 435, 449 (Fed. Cir. 2015) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)). When mounting an obviousness challenge, a party "must demonstrate ... that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the

---

[8] Parallel Networks also seeks summary judgment on the issue of anticipation. (D.I. 294 at 14.) Because Microsoft does not offer an anticipation defense, I will deny the motion as moot.

claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so." *Id.* (quoting *PAR Pharm., Inc. v. TWI Pharm., Inc.*, 773 F.3d 1186, 1193 (Fed. Cir. 2014)).

Parallel Networks identifies the following problems with Microsoft's invalidity argument: first, Microsoft failed to provide evidence sufficient to show how the MSN system operated; second, Microsoft failed to provide evidence sufficient to show that the MSN system balanced web requests, rather than session requests; and third, Microsoft failed to provide evidence sufficient to show that it would have been obvious to adapt the MSN system for use on the World Wide Web. Parallel Networks needs only to prevail on one of its three arguments to be entitled to summary judgment on the issue of obviousness.

### A. Operation of MSN 1.0

According to Parallel Networks, Microsoft cannot prevail on its obviousness theory because it cannot reliably establish "the scope and content" of the MSN 1.0 system. *See Graham*, 383 U.S. at 17-18. Microsoft's expert, Dr. Darrell Long, relied on three kinds of sources to arrive at his understanding of the MSN 1.0 system: internal Microsoft documents, including a product specification manual ("The Microsoft Network Version 1.0 Specification"); a series of Microsoft patents relating to the MSN system (U.S. Patent No. 5,774,668, U.S. Patent No. 5,941,947, and U.S. Patent No. 5,974,409); and the testimony and depositions of two Microsoft engineers – William Griffin and David Howell – who worked on the product. (*See* D.I. 296 Ex. J at A595, A602.)

Parallel Networks identifies flaws with each of the sources upon which Dr. Long relies. It argues that the product specification "does not provide detail on the structure and operation of the MSN system as it existed on August 24, 1995" (D.I. 294 at 10), that the patents "describe and contain elements not included within the MSN system" (*id.* at 8), and that the testimony from Griffin and Howell does not support Dr. Long's conclusions (D.I. 330 at 8-9 (arguing that "Mr. Howell's testimony provides no meaningful evidence regarding the relevant operation of the MSN 1.0 System" and that "Mr. Griffin's testimony ... is limited to a few discrete aspects of the relevant technology")).

Microsoft disagrees with Parallel Networks' characterization of its evidence. It explains that Dr. Long's understanding of the MSN system was based primarily on testimony from Mr. Griffin and Mr. Howell (D.I. 315 at 10-11) and that Dr. Long only used the documentary evidence to corroborate the testimony and to "put flesh on the bones of the MSN system." (D.I. 296 Ex. J at A604.) With respect to the adequacy of the witness testimony, Microsoft simply disagrees with Parallel Networks' claim that Griffin and Howell "provide[d] no meaningful evidence" about the operation of the MSN 1.0 system. (*See* D.I. 315 at 11-12.)

The parties' disagreement about the reliability of the various sources, along with their disagreement as to how the sources were used, shows that there are several disputes of fact, and thus that summary judgment would be inappropriate. It will be for the jury to decide whether Dr. Long's opinion is sufficiently supported and persuasive.

### B. Load-Balancing in MSN 1.0

The parties have a discrete disagreement regarding load-balancing in the MSN 1.0 system. They rely on the same evidence to reach different factual conclusions. Parallel Networks argues that load-balancing was done on a by-session basis, such that each of a client's requests for content was sent to the same back-end server. (*See* D.I. 294 at 18-19.) In making that argument, Parallel Networks relies on the Microsoft patents, Mr. Griffin's deposition testimony, and the MSN specification. (*Id.*) Microsoft, on the other hand, points to the same evidence, but argues that individual requests were load-balanced. (*See* D.I. 315 at 14-18.)

The issue is fact based and material, so the motion for summary judgment of invalidity with respect to it cannot be granted.

### C. "On the World Wide Web"

Parallel Networks argues that it is entitled to summary judgment because Microsoft has failed to show that it would have been obvious to implement MSN's load balancing technology on the World Wide Web.[9] (D.I. 294 at 15-16.) Parallel Networks contends that the only evidence Microsoft offers relating to this issue is a conclusory opinion from Dr. Long. (*Id.* at 15.)

Microsoft vigorously defends Dr. Long's obviousness analysis and points to specific places in his report where he reviewed the prior art and compared the prior art to the MSN system. (D.I. 315 at 21 (quoting D.I. 296 Ex. J at A605).) In presenting his

---

[9] The parties agree that the MSN 1.0 system was not "on the World Wide Web." (*See* D.I. 294 at 14 (Parallel Networks); D.I. 315 at 19 (Microsoft).)

15

analysis, Dr. Long identified specific pieces of prior art that would have motivated a person of ordinary skill in the art to adapt the MSN system for use on the World Wide Web. The most telling in this regard is the portion stating:

> [T]he gap between my application of the asserted claim language and what is left can largely be resolved by moving the MSN System from its Internet-based network, to the World Wide Web .... This gap is too small in view of the state of the art and level of ordinary skill in the art at the time of the invention to make the asserted claims patentable. Microsoft's internal documents discuss this move for the MSN System, as do other publicly available materials more broadly, thus using known Web server technology available at the time (*e.g.* IIS System, Garland, and SWEB) renders the claim invalid as obvious.

(D.I. 296 Ex. J at A605.) This reasoning, along with the rest of Dr. Long's analysis, undermines Parallel Networks' claim that Dr. Long's opinion was conclusory. There is enough here to defeat the motion for summary judgment and put the matter before a jury.

## V. Conclusion

For the reasons stated, I will deny Parallel Networks' motion for summary judgment on the invalidity defenses, will deny Microsoft's motion for summary judgment with respect to direct infringement, and will grant Microsoft's motion for summary judgment with respect to indirect infringement.