**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PARALLEL NETWORKS LICENSING, LLC, | ) ) ) ) |
| Plaintiff, | ) ) C.A. No. 13-2073-KAJ-SRF |
| v. | ) **JURY TRIAL DEMANDED** |
| MICROSOFT CORPORATION, | ) ) ) |
| Defendant. | ) ) ) |

**PARALLEL NETWORKS' MOTION FOR LEAVE**
**TO SUPPLEMENT THE EXPERT REPORT OF JOHN R. BONE**

**I.    Introduction**

Plaintiff Parallel Networks Licensing, LLC ("Parallel Networks") requests leave to supplement the expert report of John R. Bone pursuant to Federal Rules of Civil Procedure 26(e)(1) and 37(c)(1) in light of the Court's February 22, 2017 Order granting Defendant Microsoft Corporation ("Microsoft's") motion to "exclude evidence related to a survey conducted by Dr. Bruce Isaacson" (D.I. 355) and its impact on Mr. Bone's damages analysis. Mr. Bone's Second Supplemental Expert Report is attached as Exhibit 1.[1]

In his August 7, 2015 Opening Report, Mr. Bone relied on Dr. Isaacson's survey for two steps of his apportionment analysis resulting in his calculation of the incremental profit attributable to the infringing components of Window Server including IIS and ARR: (1) apportioning the total Windows Server revenue to revenue associated with ARR; and (2)

---

[1] Mr. Bone's Second Supplemental Expert Report also includes updated financial information reflecting the U.S. sales of the Microsoft Accused Products from October 2014 to April 2016 pursuant to agreement of the parties. Exhibits referenced herein are appended to the Declaration of Angela M. Vorpahl in support of this Motion filed contemporaneously herewith.

apportioning the revenue associated with ARR from other non-patented features, to estimate the relative contribution of patented features compared to non-patented features. *See*, *e.g.*, Exhibit 2 (Bone August 7, 2015 Opening Report) ¶ 16. In his Second Supplemental Report, Mr. Bone uses data previously disclosed in his opening report to calculate both apportionment steps without reliance on Dr. Isaacson's survey or modification of his overall damages methodology.

## II. Supplementation is Proper under Rule 26(e)(1)

Rule 26(e)(1) requires that a party supplement its expert report in a timely manner if "the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1). This Court has noted that a party has an "obligation" pursuant to Rule 26(e)(1) to timely supplement its expert report if the party's view of damages is "somehow changed" by the Court's ruling. *Philips Elecs. N. Am. Corp. v. Contec Corp.*, 2005 U.S. Dist. LEXIS 3718, at *17 (D. Del. Mar. 8, 2005) (Jordan, J.).

Other courts have likewise found that supplementation of expert reports is proper under Rule 26(e)(1). *See Lackey v. Robert Bosch Tool Corp.*, 2017 U.S. Dist. LEXIS 4956, at *12 (E.D. Ky. Jan. 12, 2017) ("Rule 26(e) requires parties to 'supplement or correct' a prior disclosure if they later learn that it was 'incomplete or incorrect' in 'some material respect.'"); *TracBeam, L.L.C. v. Google, Inc.*, 2014 U.S. Dist. LEXIS 193246, at *8 (E.D. Tex. Apr. 14, 2014) ("By its own terms, Rule 26(e) provides a party 'must supplement or correct [its expert reports] if the party learns in some material respect [the expert report] is incomplete or incorrect.'") (brackets in original); *Paris v. R.P. Scherer Corp.*, 2006 U.S. Dist. LEXIS 52259, at *5-6 (D.N.J. July 26, 2006) (permitting the plaintiffs to supplement their expert report pursuant

to Rule 26(e)(1) "to the extent that the report contained incomplete or incorrect information" as long as the plaintiff did not "interject new data or evidence").

As explained above, because the Court excluded Dr. Isaacson's survey and Mr. Bone's reliance thereon, Mr. Bone's opening report must be supplemented to account for the now "incomplete or incorrect" steps of his apportionment analysis for which Mr. Bone had previously relied upon Dr. Isaacson's survey. Mr. Bone's supplemental report does so by using data and evidence previously disclosed in his opening report to accomplish the two apportionment steps described above without modifying his overall methodology. Mr. Bone's supplementation is proper under Rule 26(e)(1) in light of the Court's rulings.

### III.   Supplementation is Proper under Rule 37(c)(1)

Alternatively, Rule 37(c)(1) permits a party to supplement its expert report if the supplementation is "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see Hubbell v. Carney Bros. Constr.*, 2011 U.S. Dist. LEXIS 34910, at *6 (D. Colo. Mar. 23, 2011) ("A party is permitted to supplement an expert report after the close of discovery if the failure to supplement the report timely is 'substantially justified or harmless.'"). "[S]upplementation may be proper even when it is in response to questions or challenges to the expert's opinion raised by the opposing party." *Charles v. Sanchez*, 2015 U.S. Dist. LEXIS 22752, at *23 (W.D. Tex. Feb. 24, 2015). In determining whether an expert report may be supplemented, Third Circuit courts apply the *Pennypack* factors: "(1) the importance of the information withheld; (2) the prejudice or surprise to the party against whom the evidence is offered; (3) the likelihood of disruption of the trial; (4) the possibility of curing the prejudice; (5) the explanation for the failure to disclose; and (6) the presence of bad faith or willfulness in not disclosing the evidence." *Abbott Labs. v.*

*Lupin Ltd.*, 2011 U.S. Dist. LEXIS 53846, at *8 (D. Del. May 19, 2011); *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-905 (3d Cir. 1977).

<u>First</u>, allowing Mr. Bone to supplement his expert report through use of data previously disclosed in his opening expert report is of the utmost importance because in striking Dr. Isaacson's survey the Court eliminated certain data points used in Mr. Bone's apportionment steps. If Mr. Bone is not permitted to supplement his report there will necessarily be "incomplete or incorrect" information in Mr. Bone's damages opinion.

<u>Second</u>, the prejudice or surprise to Microsoft is minimal. The information relied upon by Mr. Bone in his supplemental report are documents and testimony previously disclosed in Mr. Bone's August 7, 2015 Opening Report, responded to by Mr. Murphy in his September 8, 2015 rebuttal expert report and Dr. Long in his September 8, 2015 rebuttal expert report, and testified to by Mr. Bone and Mr. Murphy at their depositions in September 2015 and October 2015.[2]

In lieu of using Dr. Isaacson's survey to (1) apportion the total Windows Server revenue to revenue associated with ARR, Mr. Bone relies on Microsoft documents identifying the number of ARR downloads and algorithms. *See* Exhibit 1 (Bone Second Supplemental Report) ¶¶ 15-19. Mr. Bone previously discussed Microsoft's ARR download data and the ARR algorithms in his original expert report. *See, e.g.*, Exhibit 2 (Bone Aug. 7, 2015 Report) ¶¶ 65-70, 224-231. Microsoft's counsel questioned Mr. Bone about this information at his deposition. *See* Exhibit 3 (Bone Oct. 2, 2015 Dep. Tr.) at 72:18-77:5 (discussing ARR download data); 42:8-72:17 (discussing ARR infringing algorithms versus non-infringing algorithms). Microsoft's experts even addressed Mr. Bone's reliance on this information in their rebuttal expert reports. *See* Exhibit 4 (Murphy Sept. 8, 2015 Report) ¶¶ 125-127 (critiquing Mr. Bone's reliance on ARR

---

[2] The only new data in Mr. Bone's supplemental report is the updated U.S. sales of the Microsoft Accused Products from October 2014 to April 2016 pursuant to agreement of the parties.

4

download data); ¶¶ 15-16, 18, 20, 51, 63, 71, 77-78, 80-92, 124, 170, 173-174, 176, 182, 187, 189-191, 194-197 (critiquing Mr. Bone's estimate of value based on the infringing ARR algorithms rather than the non-infringing ARR algorithms); *see also* Exhibit 5 (Long Sept. 8, 2015 Report) ¶¶ 52-63, 184-186 (discussing how each of the ARR load-balancing algorithms can be utilized as a non-infringing alternative); ¶¶ 164-166 (claiming that certain ARR algorithms cannot be implemented in an infringing manner).

In place of using Dr. Isaacson's survey evidence to (2) apportion the revenue associated with ARR from other non-patented features, Mr. Bone considers the description of ARR features found in a Microsoft document. *See* Exhibit 1 (Bone Second Supplemental Report) ¶¶ 9, 31. The Microsoft document relied upon in Mr. Bone's supplemental report is referenced in Mr. Bone's original report. *See* Exhibit 2 (Bone Aug. 7, 2015 Report) ¶ 67 n.104. Microsoft's experts also addressed Mr. Bone's reliance on this information in their rebuttal expert reports and at deposition. Exhibit 4 (Murphy Sept 8, 2015 Report) ¶¶ 113-116, 128-131; Exhibit 5 (Long Sept. 8, 2015 Report) ¶¶ 41-51, 172, 187; Exhibit 6 (Murphy Sept. 28, 2015 Dep. Tr.) at 106:13-107:25, 266:13-274:12, 284:9-290:7.

The requested supplementation applies data points already present in Mr. Bone's original report. Microsoft will suffer no prejudice because the data and information on which Mr. Bone will rely is already contained within his opening expert report, and Microsoft has already had the opportunity to consider the data, cross-examine Mr. Bone on the data, and rebut the data with its own experts.[3] Mr. Bone does not rely on any previously undisclosed data or information.

---

[3] As noted below, Parallel Networks does not object to Microsoft either supplementing its own reports and/or conducting follow-up cross-examination of Mr. Bone.

<u>Third</u>, Mr. Bone's supplementation—proposed to be served over two months before trial—should not disrupt the trial schedule. Following the Court's exclusion of the survey, Parallel Networks has moved quickly to supplement Mr. Bone's report.

<u>Fourth</u>, any alleged prejudice to Microsoft can be cured by allowing Microsoft to submit, if necessary, a supplemental rebuttal report and/or allowing Microsoft to depose Mr. Bone on the content of his supplemental expert report.

<u>Fifth</u>, Parallel Networks did not conceal or otherwise "hold back" anything now included in Mr. Bone's supplemental expert report. As noted above, the data relied upon by Mr. Bone in the supplemental report was already included in Mr. Bone's opening expert report. The supplemental report is being offered solely to address the Court's February 22, 2017 Order excluding Dr. Isaacson's survey and "any expert testimony that relies on it."

<u>Sixth</u>, Parallel Networks has acted in good faith in timely requesting leave to supplement Mr. Bone's expert report following the Court's February 22, 2017 Order excluding Dr. Isaacson's survey. Parallel Networks moved quickly to present Microsoft and the Court with Mr. Bone's supplementation.

## IV.  Conclusion

For the reasons set forth above, Parallel Networks requests that the Court grant its Motion for Leave to Supplement the Expert Report of John R. Bone, attached at Exhibit 1.

| | |
|---|---|
| OF COUNSEL | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
| McKool Smith, PC | |
| Douglas A. Cawley | /s/ *Adam W. Poff* |
| Christopher T. Bovenkamp | Adam W. Poff (No. 3990) |
| Eric S. Hansen | Pilar G. Kraman (No. 5199) |
| Avery R. Williams | Rodney Square |
| Justin W. Allen | 1000 North King Street |
| 300 Crescent Court, Suite 1500 | Wilmington, DE 19801 |
| Dallas, TX 75201 | (302) 571-6600 |
| (214) 978-4940 | apoff@ycst.com |
| | pkraman@ycst.com |
| Angela M. Vorpahl | |
| 1 Bryant Park, 47th Floor | *Attorneys for Plaintiff Parallel Networks Licensing, LLC* |
| New York, NY 10036 | |
| (212) 402-9432 | |
| | |
| John B. Campbell | |
| Leah Bhimani Buratti | |
| Kevin P. Hess | |
| 300 W. 6th Street, Suite 1700 | |
| Austin, TX 78701 | |
| (512) 692-8700 | |

Dated: March 2, 2017

# CERTIFICATE OF SERVICE

I, Adam W. Poff, Esquire, hereby certify that on March 2, 2017, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Martina Tyreus Hufnal, Esquire
>Ronald P. Golden, III, Esquire
>Fish & Richardson P.C
>222 Delaware Avenue, 17th Floor
>P.O. Box 1114
>Wilmington, DE  19899-1114
>*MS_ParallelNetworksService@fr.com*
>
>*Attorneys for Defendant Microsoft Corporation*

I further certify that on March 2, 2017, I caused a true and correct copy of the foregoing document to be served by e-mail on the above-listed counsel of record and on the following:

>Juanita R. Brooks, Esquire
>Jason W. Wolff, Esquire
>Fish & Richardson P.C.
>12390 El Camino Real
>San Diego, CA  92130
>
>Stephen A. Marshall, Esquire
>Fish & Richardson P.C.
>1425 K Street, NW
>11th Floor
>Washington, DC  20005
>
>Ajit S. Dang, Esquire
>Fish & Richardson P.C.
>1180 Peachtree Street NE
>21st Floor
>Atlanta, GA  30309
>*MS_ParallelNetworksService@fr.com*
>
>*Attorneys for Defendant Microsoft Corporation*

01:15161951.1

YOUNG CONAWAY STARGATT
 & TAYLOR, LLP


*/s/ Adam W. Poff*
Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
*apoff@ycst.com*

*Attorneys for Plaintiff*