THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PARALLEL NETWORKS
LICENSING, LLC,

           Plaintiff,

v.

MICROSOFT CORPORATION,

           Defendant.

C. A. No. 13-2073-KAJ-SRF

**JURY TRIAL DEMANDED**



PUBLIC VERSION

## DEFENDANT MICROSOFT CORPORATION'S OPPOSITION TO PARALLEL NETWORKS' MOTION FOR LEAVE TO SUPPLEMENT THE EXPERT REPORT OF JOHN R. BONE

FISH & RICHARDSON P.C.
Martina Tyreus Hufnal (No. 4771)
Nitika Gupta Fiorella (No. 5898)
Ronald P. Golden III. (No. 6254)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Tel: (302) 652-5070
hufnal@fr.com; golden@fr.com;
fiorella@fr.com

Juanita R. Brooks
Jason W. Wolff
Joanna M. Fuller
12390 El Camino Real
San Diego, CA 92130
brooks@fr.com; wolff@fr.com;
jfuller@fr.com

Stephen A. Marshall
1425 K Street, N.W., 11th Floor
Washington, DC 20005
smarshall@fr.com

**ATTORNEYS FOR DEFENDANT
MICROSOFT CORPORATION**

Dated: March 8, 2017

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ..................................................................................................... 1

II. LEGAL STANDARD ............................................................................................. 1

III. ARGUMENT.......................................................................................................... 2

      A.    Rule 26 Does Not Give Parallel Carte Blanche to Submit New, Untimely Expert Opinions................................................................................................................ 2

      B.    Allowing Parallel to Submit New Expert Opinions at This Stage of the Litigation is Extremely Prejudicial to Microsoft .................................................................... 5

      C.    The *Pennypack* Factors All Weigh in Favor of Exclusion ...................................... 6

IV. CONCLUSION ....................................................................................................... 8

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott Labs. v. Lupin Ltd.*,
    Civ. No. 09-152-LPS, 2011 WL 1897322 (D. Del. May 19, 2011) ........................................4

*Abila v. United States*,
    No. 2:09-1345-KJD, 2011 WL 1447618 (D. Nev. Apr. 14, 2011)...........................................7

*Akeva L.L.C. v. Mizuno Corp.*,
    212 F.R.D. 306 (M.D.N.C. 2002) ...........................................................................................2

*Apple, Inc. v. Motorola Mobility, Inc.*,
    No. 11-cv-178-BBC, 2012 WL 5416941 (W.D. Wis. Oct. 29, 2012) .....................................2

*Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*,
    No. 05-80183-CIV, 2006 WL 5309506 (S.D. Fla. Oct. 18, 2006) ..........................................2

*Brucker v. Lowe's Home Ctrs., Inc.*,
    No. 2:10-cv-405-FTM-29SPC, 2012 WL 2225818 (M.D. Fla. June 15, 2012) ......................2

*Finch v. Hercules Inc.*,
    No. 92-CV-251-MMS, 1995 WL 785100 (D. Del. 1995) .......................................................1

*Intellectual Ventures I LLC v. Xilinx, Inc.*,
    2014 WL 1814384 (D. Del. Apr. 25, 2014)............................................................................8

*Keener v. United States*,
    181 F.R.D. 639 (D. Mont. 1998).............................................................................................2

*Konstantopoulos v. Westvaco Corp.*,
    112 F.3d 710 (3d Cir. 1997)....................................................................................................6

*Meyers v. Pennypack Woods Home Ownership Ass'n*,
    559 F.2d 894 (3d Cir. 1977), *overruled on other grounds*,
    *Goodman v. Lukens Steel Co.*, 777 F.2d 133 (3d Cir. 1985) ..............................................6, 7

*In re Paoli R.R. Yard PCB Litig.*,
    35 F.3d 717 (3d Cir.1994).......................................................................................................6

*Philips Elecs. N. Am.Corp. v. Contec Corp.*,
    2005 U.S. Dist. LEXIS 3718 (D. Del. Mar. 8, 2005) .............................................................6

*PIC Inc. v. Prescon Corp.*,
    485 F. Supp. 1299 (D. Del. 1980)...........................................................................................7

*Praxair, Inc. v. ATMJ, Inc.*,
   231 F.R.D. 457,463 (D. Del. 2005), *rev'd on other grounds*,
   543 F.3d 1306 (Fed. Cir. 2008)..................................................................2

*In re TMI Litig.*,
   199 F.3d 158 (3d Cir. 2000)....................................................................4

*Virnetx, Inc. v. Cisco Systems, Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014)............................................................3, 8

**Other Authorities**

Fed. R. Civ. P. (2)(a)(D)(i) ......................................................................1

Fed. R. Civ. P. 26 ...................................................................................2

Fed. R. Civ. P. 26(a)(2)(B)(i)..................................................................1

Fed. R. Civ. P. 26(e) .......................................................................2, 4, 7

Fed. R. Civ. P. 26(e)(1)...........................................................................2

Fed. R. Civ. P. 37(c)(l)............................................................................1

## I.      INTRODUCTION

Microsoft opposes Parallel's motion to interject untimely new expert opinions into this case on the eve of trial.  While framed as a motion to supplement the expert report of Mr. Bone, the proposed "supplemental" report is a brand new report disclosing new opinions, new analysis, new methodology, and new theory.  There is simply no excuse for Mr. Bone not raising these opinions earlier since they are based on information Parallel and Mr. Bone had when he served his original report.  And Parallel's motion unquestionably prejudices Microsoft.  The new report contains opinions based on a methodology that is even more flawed than the one this Court excluded under *Daubert*.  If the new report is allowed, then the parties will have to go through another round of *Daubert* briefing less than two months before trial.  Microsoft will also have to re-depose at least Parallel's damages expert on his new opinions, prepare new rebuttal reports, and potentially prepare its experts for subsequent deposition.  The time and costs associated with such an undertaking at this stage of litigation amplifies the prejudice to Microsoft and further burdens the Court.  Accordingly, Parallel's motion should be denied.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 26(a)(2)(B)(i) requires "a complete statement of all opinions the [expert] witness will express and the basis and reasons for them[.]" "A party must make these disclosures at the times and in the sequence that the court orders. . . . at least 90 days before the date set for trial or for the case to be ready for trial[.]" Fed. R. Civ. P. (2)(a)(D)(i).  "If a party fails to provide information or identify a witness [in the manner required by the Court under Rule 26], the party is not allowed to use that information or witness . . . at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(l).

"[F]idelity to the constraints of Scheduling Orders and deadlines is critical to the Court's case management responsibilities."  *See, e.g.*, *Finch v. Hercules Inc.*, No. 92-CV-251-MMS,

1995 WL 785100, at *9 (D. Del. 1995).  Expert testimony may be excluded to prevent the

"flouting of discovery deadlines.]"  *Praxair, Inc. v. ATMJ, Inc.*, 231 F.R.D. 457,463 (D. Del.

2005) (internal quotation marks and citation omitted), *rev'd on other grounds*, 543 F.3d 1306

(Fed. Cir. 2008).

## III.    ARGUMENT

### A.    Rule 26 Does Not Give Parallel Carte Blanche to Submit New, Untimely Expert Opinions

Parallel's statement that it has an "'obligation' pursuant to Rule 26(e)(1) to timely

supplement its expert report if the party's view of damages is 'somehow changed' by the Court's

ruling" misconstrues the legal authority on Rule 26.  The scope of supplementation permitted

by Rule 26(e) is limited and is proper "only for the narrow purpose of correcting inaccuracies or

adding information that was not available at the time of the initial report."  *Brucker v. Lowe's*

*Home Ctrs., Inc.,* No. 2:10-cv-405-FTM-29SPC, 2012 WL 2225818, at *2 (M.D. Fla. June 15,

2012) (internal quotation marks and citations omitted)); *see also Akeva L.L.C. v. Mizuno*

*Corp.,* 212 F.R.D. 306, 310 (M.D.N.C. 2002) (explaining that "Rule  26(e) envisions

supplementation when a party's discovery disclosures happen to be defective in some way so

that the disclosure was incorrect or incomplete and, therefore, misleading"); *Keener v. United*

*States,* 181 F.R.D. 639, 640 (D. Mont. 1998) (noting that "[s]upplementation under [Rule 26]

means correcting inaccuracies, or filling the interstices of an incomplete report based on

information that was not available at the time of the initial disclosure").  Courts have made clear

that Rule 26(e) is *not* intended to provide parties an opportunity "to include new examples and

illustrations to bolster previous opinions," which is exactly what Parallel is seeking to do.  *Apple,*

*Inc. v. Motorola Mobility, Inc.,* No. 11-cv-178-BBC, 2012 WL 5416941, at *28 (W.D. Wis. Oct.

29, 2012); *see also Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.,* No. 05-80183-CIV,

2

2006 WL 5309506, at *3 (S.D. Fla. Oct. 18, 2006) (explaining that "to the extent the [supplemental report] seeks to 'clarify' [the expert's] earlier opinions by bolstering them in view of [the defendant's] subsequent objections, this is not proper supplementation").

Just because Parallel titles Mr. Bone's new submission a "supplemental report" does not make it so.  Instead, Mr. Bone's new report contains different and new expert opinions and methodology.  For example, in his initial opinion, Mr. Bone used a value of ▇ to determine what portion of Windows Server licensees use IIS and then applied results from the Isaacson survey to determine what portion of the IIS revenue was potentially attributable to ARR.  (D.I. 283, ¶ Ex. 3, 228.)  The ▇ value has been discarded.  Mr. Bone now uses ARR downloads.  (D.I. 367, Ex. 1 ¶ 13.)  Mr. Bone divides the total ARR downloads by the total number of Windows Server licenses to conclude that ▇ of Windows Server licensees also download ARR.  (*Id.*)  He then multiples that value by the total Windows Server revenue.  This is an entirely different analysis than what Mr. Bone did before.  It also is directly contrary to Federal Circuit authority precluding a damages theory based on total revenue.  *See Virnetx, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014) (damages calculation must "apportion value between the patented features and the vast number of non-patented features contained in the accused products.").  Since this analysis does not isolate the accused ARR algorithms from the non-accused ARR algorithms, Mr. Bone makes up a number out of thin air by assuming that an end user has a choice to infringe or not, so he assumes 50% of the ARR downloads by end-users were infringing.  (D.I. 367, Ex. 1 ¶15.)  This opinion is further untethered from the evidence and claims than the precluded Isaacson survey data.

Mr. Bone admitted during his deposition that this analysis of ARR download data is of "limited value," and described such an analysis as having "shortcomings," (D.I. 283, Ex. 3 ¶¶

225, 229-231), adding that "there's limited conclusions one can draw from this in light of the limitations with the download data." (D.I. 368, Ex. 1 at 76:21-77:5.) Far from "supplementing" or "correcting" his opinion in this newest report—Mr. Bone has changed his position altogether. At bottom, Mr. Bone originally relied on the Isaacson survey to opine that ████████ is the revenue attributed to the accused ARR functionality. (*Id.* at 73:24-74:9.) *Without the survey, Mr. Bone has no damages opinion for ARR.* Now that the survey is excluded, Parallel is trying to submit a new, untimely, damages theory in the guise of a supplemental report.

Parallel fails to explain (because it cannot) how the differences between the reports fall within the purview of permissible Rule 26(e) supplementation. *See Abbott Labs. v. Lupin Ltd.*, Civ. No. 09-152-LPS, 2011 WL 1897322, at *3 (D. Del. May 19, 2011) ("[P]arties may not use their obligation to supplement as an excuse to violate the clear terms of a scheduling order, unilaterally buying themselves additional time to make disclosures, thereby unduly prejudicing other parties and potentially delaying the progress of a case."). The only "new information" Parallel cites to is the Court's *Daubert* decision. That, however, is not the type of new information contemplated by the Rules. Third Circuit precedent "certainly does not establish that a District Court must provide a plaintiff with an open-ended and never-ending opportunity to meet a *Daubert* challenge until plaintiff 'gets it right' and it certainly does not establish that a plaintiff must be given the opportunity to meet a *Daubert* challenge with an expert's submission that is based on a new methodology completely different from the one the expert originally engaged in." *In re TMI Litig.*, 199 F.3d 158, 159 (3d Cir. 2000).

Proving damages and infringement are Parallel's burden. It had an obligation to set forth its evidence in support of its proofs in accord with the schedule set by this Court. That the evidence Parallel relied upon did not survive the standards set out by *Daubert* does not give

Parallel a blank check to try again.  Fundamentally, Parallel's motion for leave asks that it be excused from complying with the orderly discovery procedures dictated by this Court, the Scheduling Order, the Federal Rules, and established precedent.

> **B.    Allowing Parallel to Submit New Expert Opinions at This Stage of the Litigation is Extremely Prejudicial to Microsoft**

Moreover, the schedule does not allow for new expert opinions.  Expert discovery closed in August of 2015.  The pretrial conference is in days.  Trial is less than two months away.  This is not a situation where the prejudice to Microsoft resulting from Parallel's new and late opinions, disclosed to Microsoft for the first time on March 2, 2017, can be cured.  Even if it were possible for Microsoft to prepare and serve new expert reports and then schedule the necessary depositions, it would all occur within weeks of trial.  Microsoft would be incurably prejudiced.

Parallel's assertions that Microsoft is not prejudiced because the "data" Mr. Bone is now using were "previously disclosed" in his original report strain reason.  (D.I. 366 at 2.)  The first "data", ███████ was in Mr. Bone's original report as a "validation" of his opinion, but he repeatedly disparaged it, claiming it had limited value.  (*See* D.I. 283, Ex. 3 ¶ 228-29; D.I. 367, Ex. 1 ¶ 13.)  The second "data" of 50% comes from an assumption that end-users of ARR have a binary decision to infringe or not (D.I. 367, Ex. 1 ¶ 33.) – an assumption found nowhere in Mr. Bone's original opinions and untethered to any actual data.  And the third data point Mr. Bone uses is $3/8^{ths}$.  He assumes that 3 out of 8 features of ARR listed in a document, buried in footnote 104 of his original report, are attributable to the claimed technology, thus the value of the alleged infringing technology is $3/8^{ths}$ of the revenue attributable to ARR.  Such interpretation of, and reliance on, the document was not in Mr. Bone's original report.  (*Compare* D.I. 283, Ex. 3 ¶ 67 with D.I. 367, Ex. 1 ¶ 29.)  While this information was available to Mr. Bone

during his timely opinion disclosure, it was not applied as a basis for his opinions. Doing so now is a ***new*** opinion, not a corrected or supplemental opinion.

Fundamentally, Parallel should not be rewarded for this tactical decision. Parallel could have, but chose not to, disclose alternative theories during expert discovery. Instead, Parallel proceeded at its own peril when it chose to go "all in" on the Isaacson survey, while presenting no alternative theory should the survey fails to pass *Daubert* muster. Allowing a party to rely on the *Daubert* process as an iterative trial and error exercise would turn this Court's orders and the rules of procedure and disclosure on their heads. Microsoft has been and continues to rely upon the representations made by Parallel during the discovery period in preparing for trial, and "it would be terribly unfair to allow [Parallel] to raise these issues now . . . ." *Philips Elecs. N. Am.Corp. v. Contec Corp.*, 2005 U.S. Dist. LEXIS 3718, at *17 (D. Del. Mar. 8, 2005) ("The case law is clear that the issues presented in the pretrial order control the issues to be addressed during trial.").

### C.   The *Pennypack* Factors All Weigh in Favor of Exclusion

In considering whether to exclude expert testimony, the Third Circuit has directed district courts to weigh five factors: (1) the surprise or prejudice to the non-moving party; (2) the ability of the moving party to cure any such prejudice; (3) the extent to which allowing the testimony would disrupt the order and efficiency of trial; (4) bad faith or willfulness in failing to comply with the court's order; and (5) the importance of the testimony sought to be excluded. *See Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977), *overruled on other grounds*, *Goodman v. Lukens Steel Co.*, 777 F.2d 133 (3d Cir. 1985); *see also Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997). "The determination of whether to exclude evidence is committed to the discretion of the Court." *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 749 (3d Cir.1994).

Parallel cannot meet a single *Pennypack* factor here.  **First** – Microsoft had no notice. Mr. Bone never suggested, at his deposition or in his original report, that he had a new and different opinion waiting in the wings, should he be precluded from relying on the Isaacson survey.  **Second** – the prejudice to Microsoft cannot be cured.  Trial begins in less than two months.  Even if Microsoft were allowed responsive expert reports and depositions, Microsoft will be forced to complete that all while also addressing all other pretrial matters and intensive preparation for trial.  **Third** – allowing the testimony will necessarily disrupt the trial.  In order to complete the necessary disclosures and depositions and then file and brief a new *Daubert* motion, the trial date will likely have to be moved.  At a minimum the parties will be preparing for trial without a clear knowledge of the issues to be tried.  **Fourth** - none of this is the fault of Microsoft and is instead the result of Parallel's tactical decision.  Parallel had the necessary information back in August 2015 when the expert reports were submitted.  Parallel has no explanation for why it did not include this analysis in its original disclosures.  As noted in Microsoft's fourth motion *in limine*, Parallel has already failed to comply with the Court's order when it served an earlier untimely expert report without leave.  (*See* D.I. 352, Ex. 9.)  Untimely disclosure of expert opinions should not be encouraged or rewarded.  *PIC Inc. v. Prescon Corp.*, 485 F. Supp. 1299, 1301 (D. Del. 1980) (Rule 26(e) "is designed to prevent a party from surprising his adversary by setting forth new facts . . . not disclosed during the discovery process."); *see also*, *Abila v. United States*, No. 2:09-1345-KJD, 2011 WL 1447618, at *2 (D. Nev. Apr. 14, 2011) ("A party may not . . . use a supplemental report to disclose information that should have been disclosed in the initial expert report, thereby circumventing the requirement for a timely and complete expert witness report.") (citing 6 Moore's Federal Practice § 26.131)).  Finally, **fifth**, exclusion of these new opinions does not deprive Parallel of its entire damages

case because Parallel still has a claim against the accused web sites.  Parallel maintains that

granting its motion for leave is of the "utmost importance" because this Court excluded Mr.

Bone's reliance on the Isaacson survey.[1]  But, the harm to Parallel is of its own making.  Nothing

prevented Parallel from offering, in a timely fashion, alternative damages theories.  And

whatever self-inflicted harm Parallel may suffer, such harm does not outweigh all of the other

facts significantly weighing in favor of denying Parallel's motion for leave.  *See, e.g.*,

*Intellectual Ventures I LLC v. Xilinx, Inc.*, 2014 WL 1814384, at *1 (D. Del. Apr. 25, 2014); (*see

also id.,* D.I. 598 (April 17, 2014 Oral Order stating plaintiff "may NOT supplement its damages

report and the case shall proceed to trial on the current schedule . . . .).)  In this circumstance, the

Court should not allow the new and untimely damages opinions into the case.

## IV.    CONCLUSION

For the reasons specified above, Microsoft respectfully requests that this Court deny

Parallel's motion for leave.

---

[1] Parallel concedes that Mr. Bone cannot apportion damages, as he is required to do, without the Isaacson survey or his new opinions.  *See Virnetx, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014) (damages calculation must "apportion value between the patented features and the vast number of non-patented features contained in the accused products.").  If the Court precludes Mr. Bone's untimely opinions, it should also grant Microsoft's Fifth *Motion in Limine* precluding Parallel from introducing a damages theory on Windows Server and ARR.

Dated:  March 8, 2017                    FISH & RICHARDSON P.C.


                                         By:  */s/ Martina Tyreus Hufnal*
                                              Martina Tyreus Hufnal (No. 4771)
                                              Nitika Gupta Fiorella (No. 5898)
                                              Ronald P. Golden III (No. 6254)
                                              222 Delaware Avenue, 17th Floor
                                              Wilmington, DE 19801
                                              Tel: (302) 652-5070
                                              hufnal@fr.com; fiorella@fr.com
                                              golden@fr.com

                                              Juanita R. Brooks
                                              Jason W. Wolff
                                              Joanna M. Fuller
                                              12390 El Camino Real
                                              San Diego, CA 92130
                                              brooks@fr.com; wolff@fr.com;
                                              jfuller@fr.com

                                              Stephen A. Marshall
                                              1425 K Street, N.W., 11th Floor
                                              Washington, DC 20005
                                              smarshall@fr.com

                                         ATTORNEYS FOR DEFENDANT
                                         MICROSOFT CORPORATION

9

## <u>CERTIFICATE OF CONFIDENTIALITY</u>

This document contains confidential information subject to the protective order. The confidential information contained herein is that of Microsoft Corporation

## CERTIFICATE OF SERVICE

**PLEASE TAKE NOTICE** that on March 8, 2017, a true and correct copy of the

foregoing SEALED document was caused to be served by electronic mail on the following

attorneys of record:

Adam W. Poff
James M. Lennon
Pilar G. Kraman
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
apoff@ycst.com
jlennon@ycst.com
pkraman@ycst.com

Leah Bhimani Buratti
John B. Campbell
Kevin P. Hess
Mckool Smith, PC
300 West 6th Street, Suite 1700
Austin, TX 78701
lburatti@mckoolsmith.com
jcampbell@mckoolsmith.com
khess@mckoolsmith.com

Angela M. Vorpahl
Mckool Smith, PC
1 Bryant Park, 47th Floor
New York, NY 10036
avorpahl@mckoolsmith.com

Douglas A. Cawley
Christopher Bovenkamp
Eric S. Hansen
Avery R. Williams
McKool Smith
300 Crescent Court, Suite 1500
Dallas, TX 75201
dcawley@mckoolsmith.com
cbovenkamp@mckoolsmith.com
ehansen@mckoolsmith.com
awilliams@mckoolsmith.com

*/s/ Martina Tyreus Hufnal*
Martina T. Hufnal