```
                IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF DELAWARE


PARALLEL NETWORKS LICENSING, LLC,)
                                 )
              Plaintiff,          )
                                 ) Civil Action
v.                               ) 13-2073-KAJ
                                 )
MICROSOFT CORPORATION,           )
                                 )
              Defendant.          )


                         ----


                 Monday, March 13, 2017
                 2:00 p.m.
                 Courtroom 4B

                 844 King Street
                 Wilmington, Delaware


BEFORE:  THE HONORABLE KENT A. JORDAN, U.S.C.C.J.


APPEARANCES:

             YOUNG CONAWAY STARGATT & TAYLOR
             BY: PILAR KRAMAN, ESQ.

                 -and-

             McKOOL SMITH, P.C.
             BY: DOUGLAS A. CAWLEY, ESQ.
             BY: CHRISTOPHER BOVENKAMP, ESQ.
             BY: ANGELA VORPAHL, ESQ.
             BY: JOHN CAMPBELL, ESQ.
             BY: KEVIN HESS, ESQ.

                 Counsel for the Plaintiff
```

APPEARANCES CONTINUED:


                FISH & RICHARDSON
                BY: JUANITA BROOKS, ESQ.
                BY: JASON WOLFF, ESQ.
                BY: MARTINA HUFNAL, ESQ.
                BY: NITIKA FIORELLA, ESQ.
                BY: RONALD GOLDEN, ESQ.


                    Counsel for the Defendants

```
1                    THE COURT:  Good afternoon.

2       Please be seated.  Thanks.  I have got the

3       sign-in sheet, but it would be helpful if we

4       took a moment for some introductions.  So why

5       don't we start with Ms. Kraman, if you would,

6       plaintiffs.

7                    MS. KRAMAN:  Good afternoon, Your

8       Honor.  Pilar Kraman for the plaintiff.  And

9       with me at counsel table again is Doug Cawley,

10      Chris Bovenkamp and Angela Vorpahl.  And behind

11      us is Kevin Hess and John Campbell.

12                   THE COURT:  Good afternoon.  Thank

13      you very much.  Ms. Hufnal for Microsoft.

14                   MS. HUFNAL:  Good afternoon.

15      Martina Hufnal.  With me is Juanita Brooks,

16      Jason Wolff, Nitika Fiorella and Ronald Goldman.

17      And from Microsoft we have Stacy Quan.

18                   THE COURT:  Thank you one and all

19      for being here.  Let me tell you what, it's

20      probably no history or secret to any of you that

21      I spent some time already today with folks from

22      Parallel Networks this morning.  I intend to

23      kind of follow the same pattern which is tell

24      you what I have got teed up, ask you if there is
```

1    anything I'm missing.  Start with voir dire and

2    jury instruction issues and then turn to in

3    limine motions.

4              But I'll begin by saying is there

5    anything that outside of those matters that has

6    to be addressed in this hearing?

7              Mr. Bovenkamp?

8              MR. BOVENKAMP:  Not that I'm aware

9    of, Your Honor.

10             THE COURT:  Okay.

11             MS. HUFNAL:  There is one

12   outstanding motion to supplement an expert

13   report.  I'm not sure if Your Honor was going to

14   hear argument on that today.

15             THE COURT:  Yes, I will.  That's

16   to -- which is that?

17             MS. HUFNAL:  Parallel Networks'

18   motion to supplement the expert report for their

19   damages expert.

20             THE COURT:  Yes, we will be

21   hearing that.  Okay.  Let's start with the voir

22   dire jury instruction matters.  First off, I got

23   the requested jury questionnaire.  We will not

24   be using that.  Your questions, let me tell you

     1      that I have taken a look at those, the jointly

     2      asked questions are fine for voir dire.

     3      Microsoft -- we'll start with Parallel Networks.

     4      Your first question is fine, I'll ask that.  All

     5      the others that claim to be overly

     6      argumentative, I won't be asking those.

     7                    Microsoft, I thought your first

     8      five questions were okay, six through ten were

     9      overly argumentative.  I won't be asking those,

    10      so please prepare an appropriate voir dire

    11      question sheet with those rulings in mind.

    12                    Preliminary jury instructions, the

    13      only thing I saw there that looked to me like it

    14      needed attention was the question about the

    15      conduct of the jury, that was at pages --

    16      beginning at page five, I think.  And we're

    17      going to go with the Microsoft's version of

    18      that.  I don't want the jury talking about this

    19      case until -- unless and until it gets to them.

    20      So I don't want to imply that they can chat

    21      about the substance of it before that.

    22                    Now, that point does not need to

    23      be reiterated as it was suggested on page nine,

    24      because it comes up twice.  So it doesn't -- let

```
 1     me make sure.  At the bottom of page nine it has

 2     got a second -- it's hitting that thing twice

 3     and I don't think that's necessary, so that

 4     should come out.

 5                On the final jury instructions, I

 6     really didn't see anything in there that I

 7     didn't think could wait until trial and we see

 8     what comes in.

 9                And that brings us to the in

10     limine motions.  And why don't we go to the

11     question about Mr. Bone.  This is defendant

12     Microsoft's opposition to motion for leave to

13     file a supplement.  Who is speaking to this on

14     behalf of Microsoft?

15                MS. HUFNAL:  I am, Your Honor,

16     Martina Hufnal.

17                THE COURT:  All right.

18     Ms. Hufnal.

19                MS. HUFNAL:  And just to be clear,

20     this is the opposition to the motion to

21     supplement the expert report?  There is also a

22     motion on the MIL.  I just want to be clear I'm

23     arguing the right thing.

24                THE COURT:  I might be getting
```

```
 1    this out of order.  I apologize.  You know what,

 2    let's -- he yeah, I picked up your opposition

 3    first.  PNL, Mr. Campbell, do you have got this?

 4    Okay.

 5              MR. CAMPBELL:  Good afternoon,

 6    Your Honor.  John Campbell for Parallel

 7    Networks.  Just so I'm on the right page, this

 8    is the motion to supplement Mr. Bone's testimony

 9    or Mr. Bone's expert report.

10              THE COURT:  Exactly.  Thank you.

11              MR. CAMPBELL:  So, Your Honor, I

12    can -- I'm sure Your Honor has read the papers,

13    but essentially what we're seeking is leave for

14    Mr. Bone to file a supplemental report that

15    addresses the issues where he no longer has a

16    survey to rely upon.  He's gone through and

17    looked at Microsoft's own documentation.  A lot

18    of this information was in his original report,

19    some of it was discussed in his original report

20    and determined that, you know, even without the

21    survey, he can apply the same methodology, the

22    same approach, do the same damages analysis, but

23    use Microsoft's own documentation to do the

24    apportionments necessary to go from the
```

```
1    WindowServer revenue to the WindowServer profit

2    attributable to the patents.  So this is all in

3    an effort to replace the information that is no

4    longer available for the survey.

5              THE COURT:  Okay.  I understand.

6    Thank you.

7              Ms. Hufnal.

8              MS. HUFNAL:  Good afternoon, Your

9    Honor, Martina Hufnal.  On the timeliness, there

10   are significant time restraints, constraints

11   with trial coming seven weeks away.  I will

12   address the methodology issue that counsel just

13   raised.  It is not just switching in numbers the

14   same methodology, the theory behind his

15   calculations are changing.  It is true that in

16   both cases he starts with total revenue.

17              Before what he did was use a

18   multiplier to get the IIS percentage and then he

19   used the Isaacson survey to get the percentage

20   of IIS that was accused ARR.  What he's doing

21   now is total revenue and use a multiplier to get

22   ARR down, so we're not even dealing with IIS, we

23   are going right to the download.

24              And from that he uses a 50 percent
```

1    number, he says half of the time you're going to

2    be intelligent load balancing, half not.  Now

3    he's saying we have got these ARR downloads and

4    half of those are related to the accused

5    technology and then he uses a different

6    multiplier to do value on that.

7              But the theory is different.  The

8    numbers are conveniently similar in

9    multiplication, but the theory which is what we

10   want to question him on is the rationale, the

11   theory, is really a new opinion.  It is not a

12   situation where it's just kind of a taking or

13   questioning the numbers that are used, it's a

14   new thought process, a new methodology.

15             The prejudice here is significant

16   to Microsoft in doing pretrial, getting ready

17   for trial, having to have our not just damages,

18   but technical expert deal with this because it's

19   a new analysis all seven weeks before trial.

20   Fundamental they could have done an alternative

21   analysis in their opening expert report, so the

22   harm here is really just self inflicted by

23   Parallel.

24             THE COURT:  Mr. Campbell, anything

1    from you in response?

2              MR. CAMPBELL:  If Your Honor has

3    any questions I'm happy to go through the

4    methodology to explain what Mr. Bone changed.

5    We are still seven weeks I think is a long

6    period of time.  They have his supplemental

7    report, we gave it to them at the time we filed

8    the motion for leave.  So we're done.  If they

9    would like to supplement their reports, we have

10   no objection to that, we're happy to deal with

11   that.

12             THE COURT:  Thanks.  Well, I'm

13   going to grant the motion and I know it puts a

14   burden on Microsoft to have to make changes and

15   consult its experts, but I'll ask for you folks

16   to provide some kind of a schedule so that there

17   is an end point.  I don't want it dragging out

18   so I expect the Parallel Networks will make

19   Mr. Bone available for a deposition at the

20   convenience of Microsoft's counsel, whenever

21   that might be.

22             MR. CAMPBELL:  Absolutely.

23             THE COURT:  And that to the extent

24   there needs to be some kind of supplemental

1    response from Microsoft's experts, it goes

2    without saying that I would grant their request

3    to do that.  And there would also be leave for

4    further deposition by Parallel Networks to the

5    extent that's necessary to flesh things out.

6              The good news for you guys is you

7    have excellent lawyers and I figure you can get

8    this covered.  I realize you're on a relatively

9    short fuse, but so weren't we all in getting

10   ready for trial.

11             Ms. Hufnal.

12             MS. HUFNAL:  Yes, Your Honor.

13   Because of the difference in the methodology

14   here and the lack of support for a lot of the

15   numbers, we would request leave to file another

16   Daubert.

17             THE COURT:  Yes.  You can -- the

18   answer to that is yes, if you have a basis for

19   saying look, this is new and it's different and

20   it's not well rooted, you got your shot.

21             MS. HUFNAL:  Okay.

22             THE COURT:  When I say I would

23   like to draw a line under this, I mean that.  I

24   don't want to be facing a Daubert motion on the

```
 1    eve of a trial.  You have had this document for

 2    a while -- I mean, you haven't had it for all

 3    that long, I think I only issued my opinion

 4    what, a few weeks ago, so it's not even been a

 5    month, so you haven't had it for too long, but

 6    hopefully you have been working and moving and

 7    planning for how you would address this.

 8              To the extent you have got a

 9    Daubert motion, that should get to me so that I

10    have got at least a couple of weeks before we're

11    supposed to sit down at a trial to turn that

12    around.  Right?  Because this is going to be

13    pretty darn important in determining what kind

14    of case, if any, is coming in for the plaintiff.

15    Right?

16              MR. CAMPBELL:  Yes.

17              THE COURT:  So talk to each other

18    in good faith, come up with a schedule and get

19    it to me so that I have got better than a couple

20    of weeks to address it and still have people

21    limit the impact on ramping up for a trial that

22    may or may not have to happen depending on that.

23    Everybody squared on that?  I would like to hear

24    from you on that by the end of this -- certainly
```

```
 1        not by the end of this week, but get together on

 2        this and let me know by Wednesday, what's the

 3        schedule that we have got, when can I expect to

 4        have a full set of briefing on a Daubert motion,

 5        which I expect that we are going to be seeing,

 6        and when will we get all of the deposition work

 7        and all that kind of thing done so that there is

 8        nothing left to be done except for trial

 9        preparation.  I don't have to worry about that

10        so much, but I want to know it's over.  Does

11        everybody follow what I'm asking for?  So day

12        after tomorrow let me know when I can expect it.

13        All right?

14                    MR. CAMPBELL:  Yes, Your Honor.

15                    THE COURT:  All right.  Thanks.

16                    Turning to the in limines, start

17        with I believe Parallel Networks only had one,

18        am I right about that?

19                    MR. CAWLEY:  That is correct, Your

20        Honor.

21                    THE COURT:  Who is going to be

22        speaking to that?

23                    MR. CAWLEY:  I am.

24                    THE COURT:  Okay.  Mr. Cawley.
```

1           MR. CAWLEY:  Your Honor, Parallel

2    Networks has basically an investor, a

3    shareholder who brought financing to them.  This

4    motion in limine seeks to exclude anything other

5    than I guess during voir dire asking the jury if

6    anybody knows of that entity, Parabellum,

7    otherwise there is going to be no witness from

8    them.  I think it's a simple equation of our

9    motion in limine under Rule 403, the Court first

10   inquires whether the testimony would make any

11   pertinent fact in the case more or less likely,

12   and it would not in this case.  So the Court

13   doesn't have to reach the second prong which is

14   whether it would be unduly prejudicial.

15           THE COURT:  Speak if you would,

16   please, Mr. Cawley, on the assertion that they

17   make in their response that ownership is

18   relevant to other issues about the history of

19   the development of the patents-in-suit and

20   attempt to make Parallel Networks appear to be

21   an entity that's practicing the patents.  Those

22   past and present ownership relevant to rebut

23   showings of commercial success.  Can you speak

24   to those issues?

```
 1              MR. CAWLEY:  Yes, Your Honor.

 2              First of all, commercial success

 3    is a questionable relevance once we're not

 4    dealing with obviousness.  But we're not asking

 5    that the Court prohibit any inquiry into who the

 6    previous owners were, and to what they did.  The

 7    issue here is does that reach into the identity

 8    of a shareholder of the current owner, Parallel

 9    Networks.  There is not going to be any dispute

10    that Parallel Networks is a licensing company.

11    It's made some incipient efforts to get into

12    business, but those have not been successful to

13    this point.  All of that is fair game.

14              What we think is not relevant to

15    the truth or falsity of any relevant fact at

16    issue is whether there is an investor,

17    Parabellum, which has brought financing to

18    Parallel Networks.

19              THE COURT:  I got you.  Thanks

20    very much, Mr. Cawley.

21              Who is responding on this?

22              MS. FIORELLA:  I am, Your Honor.

23              THE COURT:  Ms. Fiorella.

24              MS. FIORELLA:  Good afternoon,
```

1    Your Honor.  Microsoft feels that it is

2    relevant.  And Parallel has not shown any

3    prejudice, they only argue relevance.

4                    THE COURT:  I think it's a better

5    than straight faced argument to say they're just

6    trying to get the jury to not like us based on a

7    shareholder who finances litigation associated

8    with patent portfolios.  This is a not very

9    thinly veiled effort to say these guys are bad

10   trolls, don't listen to them.  Now, that

11   certainly seems to be the implication of what

12   you're trying to do, isn't it?

13                    MS. FIORELLA:  No, Your Honor.

14   First, it's really only -- the main relevance

15   here is to just show the jury who the real

16   parties in interest are.

17                    THE COURT:  What does it matter

18   about -- what does the ownership interest of

19   Parabellum have to do with any issue that's in

20   the case?  That's what I guess we ought to start

21   with.

22                    MS. FIORELLA:  So the two issues

23   that we bring up in our briefing is the history

24   and development of the patent and the commercial

```
 1      success.  Obviousness is still an issue here, so
 2      commercial success is still an issue.  And with
 3      respect to Parallel Networks assertion that
 4      everything, all the predecessors are still fair
 5      game, it doesn't really make sense to stop the
 6      story.  So if they're going to be talking about
 7      InfoSpinner, all the different entities to which
 8      the patents had changed hands over the years and
 9      just stop and say Parallel Networks that's it,
10      and tell the jury that's it, it's not.
11                  THE COURT:  Why isn't that it?
12      Does Parabellum own the patents?
13                  MS. FIORELLA:  It owns a
14      percentage of the patents.
15                  THE COURT:  It owns -- do I
16      understand correctly that Parabellum owns a
17      share of Parallel Networks?
18                  MS. FIORELLA:  There is a -- yes,
19      it owns a share of Parallel Networks who owns
20      the patents.
21                  THE COURT:  Well, that's a
22      distinction with a difference; right?
23                  MS. FIORELLA:  There is still
24      ownership interest in the patents, the asserted
```

1    patents that Parabellum holds.

2              THE COURT:  How is there an

3    ownership interest other through the ownership

4    that it has in Parallel Networks?  Does it own

5    the patents, forget Parallel Networks, does

6    Parabellum have an ownership interest other than

7    through Parallel Networks?

8              MS. FIORELLA:  I do not believe

9    so.

10             THE COURT:  Okay.  Well, I'm going

11   to grant the motion in limine, then.  I think on

12   balance the 403 argument is persuasive to me.  I

13   don't see how it's relevant to any issue in the

14   case.  That doesn't prevent -- and I think I

15   heard him concede this, that doesn't prevent you

16   from talking about the ownership of the patents,

17   how that's changed hands over time, you're

18   perfectly free to do that, but Parabellum, it's

19   a shareholder as far as I'm concerned, based on

20   what I have heard and read, it has nothing to do

21   with the case.  It's meaningless to any issue

22   the jury is going to hear.  That one is granted.

23             MS. FIORELLA:  Thank you, Your

24   Honor.

```
 1                   THE COURT:  Microsoft's first

 2       motion in limine, who has got that?

 3                   Mr. Wolff.

 4                   MR. WOLFF:  Jason Wolff, Your

 5       Honor.

 6                   Our argument is that -- you read

 7       the brief, how about if I respond to theirs.

 8       Parallel cites three cases that say that the

 9       outcomes, or they say that the reexamination

10       history should come in from the post grant

11       proceedings.  They are the Stone Eagle case, the

12       Universal Electronics case and the Oracle case.

13       And every one of those cases the reexamination

14       proceedings had completed.  There was nothing

15       further to be done.  And those, in two of those

16       cases, in the Stone Eagle case and in the

17       Universal Electronics cases, they were

18       terminated and the petitions that had instigated

19       those things had been denied, the petitions

20       themselves had been denied, so there was no

21       appeal, everything was over.

22                   In the third case, in the Oracle

23       case there were two issues -- I'm sorry, three

24       patents at issue there, all were subject of
```

```
1     reexamination proceedings.  In two of those
2     reexamination proceedings they had been
3     terminated, there was no further appeal,
4     everything was completely done.  In the third,
5     the reexamination proceeding was continuing and
6     the judge in the Oracle case said that one is
7     not coming in, it's not done.  That's exactly
8     what's happening here.  The IPR's that were
9     filed are continuing, they're on appeal and
10    they're not done yet.  And allowing the jury to
11    consider the findings or the final written
12    decision of the PTAB is encouraging them to not
13    have to do anything with the invalidity
14    arguments in front of the court.
15                    Parallel has a couple of
16    arguments, they say why this should come in,
17    they say it's relevant because they want to put
18    context in, but the final written decision
19    hadn't come out when Parallel made its arguments
20    to the patent office, so if statements or
21    evidence proffered by either side, it should be
22    fair game, those are things that should be
23    allowed into the case, statements contrasting
24    issues that are being litigated, but the final
```

```
1    written decision, it just shouldn't be there.
2    It's not done.  It's not terminated.
3              They have a couple of arguments
4    they make about that they want to be able to say
5    that the reexamination outcome shows that it was
6    a high probability of validity.  This is exactly
7    why we're saying it shouldn't come in.  They
8    want to say that that Parallel will be unable to
9    point out that Microsoft chose not to raise its
10   own prior art at the patent office.  Well, we
11   couldn't.  It's a system.  You can't raise
12   system prior art.  This is another reason why
13   all this stuff coming in and all these extra
14   arguments they want to make about conclusions to
15   reach makes it so you have to instruct your jury
16   this is what happens in the IPR and this is what
17   is different here, this is what is different
18   there, it's unduly prejudicial.
19              THE COURT:  I got you, Mr. Wolff.
20              Who has got the ball for Parallel
21   Networks?
22              MR. HESS:  Kevin Hess for the
23   plaintiff.
24              I think our main problem with
```

```
 1    Microsoft's MIL as crafted is that they want to
 2    be allowed to reference arguments made during
 3    the IPR regarding claim scope or statements made
 4    that are inconsistent with the parties' position
 5    in this case.
 6              THE COURT:  Yes, I read your
 7    shield and sword thing.  Help me understand
 8    this.  Is there not a meaningfully difference
 9    between the sort of thing that we think of as an
10    estoppel, a judicial estoppel, that is you don't
11    let people say things different in one form than
12    they said in another form and the idea that
13    you're going to bring in everything that
14    happened in that other forum.  I'm not seeing
15    that as a sword and shield problem, Mr. Hess.  I
16    see judicial estoppels all the time and nobody
17    says if we're estoped, then everything from
18    that other discussion should be fair game to
19    come in.
20              MR. HESS:  I think we would be
21    attacking the fact that estoppel even applies
22    here.  We're attacking the premise that there
23    even were inconsistent statements made at IPR.
24    Both the Court here in its ruling on claim
```

 1    construction found that Parallel made no

 2    narrowing arguments at IPR, and in fact PTAB

 3    itself weighed this very issue in the final

 4    decision.

 5                THE COURT:  So you ought to be

 6    very happy with that.  Do you have anything that

 7    meets Mr. Wolff's argument that this would

 8    really complicate matters for the jury to try to

 9    understand what the rules are that govern inner

10    parties review and keep that straight in their

11    heads while they're trying to figure out the

12    technical arguments and the legal arguments that

13    you're making in this court?

14                MR. HESS:  I think we could draft

15    up some jury instructions on this issue and feel

16    pretty confident the jury could understand that

17    there was some other proceeding.  It does not

18    have a binding effect on their decision, but

19    their bind might be persuasive, there are cases

20    out that there PTAB can be persuasive in a

21    district court proceeding.

22                THE COURT:  I don't have any lack

23    of confidence in your abilities, but I do lack

24    confidence in the outcome that you described,

```
1     that is that the jury won't have a problem with

2     this, I think it's more prejudicial than

3     probative and I grant the motion in limine.

4     We're not going to get into the inner parties

5     review.

6                      To the extent there are statements

7     that can be cross-examined on because they were

8     said under oath, a witness will face his or her

9     own words just as they would if they had said

10    them in a deposition or something like that.

11    But the fact that there was a IPR and the

12    outcome of that, that's not fair game.

13                   MR. HESS:  Understood.  Just for

14    clarification, does that also include statements

15    made in a declaration?

16                   THE COURT:  Yes, if the

17    declaration is made under oath, so they are

18    going to get cross-examined on it.  If somebody

19    thinks they can make hay of it, you guys will be

20    on your feet if you think they're unfairly using

21    something just the way it would be if they were

22    unfairly using a deposition.  We'll deal with

23    that if and when we deal with it.  They can use

24    those declarations, but we're not going to get
```

```
 1        into the fact that there was an IPR.

 2                  Microsoft number two, and this is

 3        something that probably shouldn't surprise the

 4        people from Parallel Networks.  We kind of

 5        covered this this morning.  In the interest of

 6        time, you're about to win, so unless you really

 7        want to say something, you should probably stay

 8        seated.

 9                  I just -- based on Knorr-Bremse,

10        Section 298, I don't think the fact that they

11        did or didn't get opinions is either here nor

12        there.  That does not mean that there can't be

13        an opening of the doors as you folks

14        acknowledged in your papers, you can say things

15        that they in good faith may say to me, Judge,

16        they have opened this up and we're going to deal

17        with it.

18                  Now, having said that, I fully

19        expect if we have a trial, we'll be arguing

20        about this at side-bar, not even at side-bar, I

21        expect we'll be arguing about it while the jury

22        is not in the box at break, because somebody is

23        going to ask something of a Microsoft witness

24        that undoubtedly Parallel Networks will say
```

```
 1    well, that opened the door.  So maybe I'm just

 2    kicking the can down the road, but as a general

 3    proposition without knowing what's coming in,

 4    because the I don't know the questions and

 5    answers yet, I'm saying I'm granting that motion

 6    in the abstract, it's got nothing to do with the

 7    case.  In the heat of the discussion, might a

 8    door be opened?  Yes.  And I'll deal with that

 9    if and when I have to deal with it.  All right?

10              Microsoft motion in limine number

11    three, who has got the ball on that one?

12              MR. GOLDEN:  I do, Your Honor.

13              THE COURT:  All right.

14    Mr. Golden, while you're getting ready to talk

15    about this, can you just answer me right from

16    the get go whether this was a matter that was

17    brought before Judge Robinson at all?  Is there

18    a back story here?

19              MR. GOLDEN:  Yes, Your Honor,

20    there is a back story.  I think it was October

21    of 2015, a little bit before my time, the

22    parties had a joint status conference with IBM

23    about this.  Parallel sort of says in passing

24    that Judge Robinson decided this as it related
```

1    to Microsoft, but when I checked the transcript

2    it appears that she made sort of somewhat of a

3    definitive ruling toward IBM, but left this sort

4    of open ended in the context that the parties

5    were intending to file Daubert motion challenges

6    the Isaacson survey.  So what I actually would

7    turn to with that said is the fact that even

8    though the universe has shifted a bit with you

9    having just granted the motion for leave and

10   giving us the opportunity to respond to the

11   Daubert motion, we actually put in our summary

12   judgment brief for no infringement that even

13   their own technical expert actually admits that

14   I think he says it certainly wasn't a focus,

15   that is in the context of outside sales he does

16   not believe that if anyone downloaded a copy of

17   ARR in Brazil that it would meet any of the

18   claims.

19           So essentially what we have is a

20   late filed report after the expert rebuttal

21   report discovery deadline, Parallel's

22   infringement expert saying that these sales are

23   not even relevant to what's being asserted in

24   the case, and it's essentially prejudicial to

```
 1    Microsoft because it appears that they're just

 2    trying to add more money to their damages

 3    number.

 4              THE COURT:  Have you had this

 5    report since 2015?

 6              MR. GOLDEN:  We have.  When they

 7    did not ask the Court for leave to serve it

 8    after they were previously denied twice leave to

 9    include this information in their expert report.

10              In fact just before that, there

11    was another discovery dispute before Magistrate

12    Judge Fallon in which the main subject of it was

13    whether Microsoft should have to produce a

14    witness under 30(b)(6) for a deposition and in

15    denying that they also denied their request to

16    file the supplemental expert report or what we

17    refer to it as the untimely report.

18              THE COURT:  Okay.  Thanks very

19    much, Mr. Golden.

20              Who is speaking on behalf of

21    Parallel Networks?

22              MS. VORPAHL:  Good afternoon.

23    Angela Vorpahl for Parallel Networks, Your

24    Honor.  As you pointed out, Microsoft has had
```

```
1        this report since September of 2015 and it did

2        come up in the October of 2015 conference on

3        expert testimony when Judge Robinson ruled on

4        which Daubert motions would be allowed and which

5        wouldn't.  In that hearing, she recognizes that

6        Mr. Bone's supplemental report was only four

7        pages long, takes his methodology that he

8        applies to US sales and all he does is take

9        outside US sales information from Windows Server

10       and applies it to the technology.  She says

11       here, "I mean, that does not sound unreasonable

12       to me.  They had a theory.  They asked for

13       information.  You didn't give it.  They found

14       it.  They added numbers consistent with what

15       they already had in their report."  At the end

16       of the day, she did not permit a Daubert motion

17       on this.

18                  THE COURT:  Well, I think actually

19       the most significant thing might be what

20       Mr. Golden said right at the jump, which is

21       accurate, that the ground has shifted under you

22       based on my ruling with respect to them having a

23       chance to supplement Dr. Bone's report again,

24       and you all having a chance to file a Daubert
```

1    motion with respect to that.  So if you want to

2    include in your Daubert arguments an argument on

3    this, I'll let you do it.  You're going to be

4    taking a crack at it.  But I'm not ruling in

5    limine that they can't do it.  You take it up in

6    the context of what we're dealing with, we have

7    thrown expert stuff a little bit up in the air

8    and you'll have a chance to shoot at it now.

9    All right.

10              But as for an in limine motion

11    right now, it's denied without prejudice to what

12    we have just discussed.

13              Microsoft's number four,

14    Ms. Brooks.

15              MS. BROOKS:  Thank you, Your

16    Honor.  And I didn't want to interrupt the

17    Court, but to go back on the preliminary

18    instructions, there was one other issue which is

19    the glossary, and we had objected to -- Parallel

20    had proposed a glossary at the end of the

21    preliminary instructions and we had objected to

22    that.  I don't know if Your Honor wants to deal

23    with that now or later, but there was that one

24    other issue.

31

```
 1                    THE COURT:  Thank you for pointing

 2        that out.  I hadn't picked up that there was

 3        that objection.  Let me take it in two parts.

 4        First, assume I were a client to say go ahead

 5        and they can have a glossary, is there anything

 6        about the definitions in the glossary that are

 7        troubling to you in specific?

 8                    MS. BROOKS:  The two things that

 9        are in there based on Your Honor's ruling

10        regarding the reexamination, they have a

11        definition of reexamination history and inter

12        parties review history, or IPR history, so we

13        would definitely object to those as causing jury

14        confusion since that will not be before the

15        jury.

16                    The rest of them are all benign.

17        Our only concern is this is dealt with in the

18        FJC video, whether this is going to place undue

19        emphasis on these terms, I don't know, but we

20        wouldn't have strong objection to the rest of

21        them, but those two we do.

22                    THE COURT:  The IPR stuff is out

23        and I'm not sure the reexamination comes in for

24        any other reason, does it?  Is there some reason
```

1    Mr. Bovenkamp, that a reexamination is relevant

2    at all?

3           MR. BOVENKAMP:  Yes, Your Honor, I

4    do believe the reexamination is relevant just

5    like the prosecution history of the patent is

6    relevant to give the jury the background as to

7    what has happened and in this case there are

8    references that were considered during the

9    reexamine that are still at issue.

10          THE COURT:  But you don't have to

11    reference a reexamine to make that point.  But

12    you know what, leave it out of the glossary.

13    And so those two things are out of the glossary.

14    And I don't see a problem with them having a

15    glossary of terms otherwise.  Okay?

16          Thanks, Ms. Brooks, for getting to

17    that.

18          MS. BROOKS:  Thank you, Your

19    Honor.  Now back to motion in limine four.  I

20    would just address directly their opposition to

21    it.  This deals with the E-mail that Mr. Focus

22    to Ms. Quan that we say is impermissible under

23    two grounds, one is the nondisclosure agreement

24    that was in place, the confidentiality agreement

1    that was in place at the time and two, under

2    Rule 408.  What Parallel Networks argues is that

3    even if its admission is prohibited by the

4    agreement that had been entered into, the NDA

5    agreement, it's admissible to show willfulness.

6              Now, first of all, in an

7    interrogatory response that we filed on February

8    20th of 2015, Microsoft said, "Microsoft further

9    responds that Microsoft first became aware of US

10   patent numbers '335 and '554 as originally

11   issued prior to the invalidation and the

12   abandonment of all then issued claims in 2006."

13             So in other words, we are

14   admitting that we had notice of these patents

15   since 2006.

16             THE COURT:  Then explain to me

17   what is it about this very short E-mail, I just

18   -- I guess I am clueless.  Why are we battling

19   so hard about this?

20             MS. BROOKS:  It's the second part

21   of it, Your Honor.  I need my reading glasses

22   for this.  It's the second paragraph, Your

23   Honor.  It says, "I have also attached a claim

24   chart mapping claim 30 from the certificate of

1    correction of the '335 to Microsoft's

2    application request routing architecture."  And

3    then, Please don't hesitate to contact me, et

4    cetera.

5              So what Parallel Networks intends

6    to do by this is argue willfulness.  If you look

7    at the top of the E-mail, it specifically is

8    marked by Mr. Focus as FRE 408.  And so they are

9    not allowed to use 408 discussions that are

10   protected under 408 to show liability and that's

11   exactly what they want to do.

12             And unfortunately what this also

13   does is it opens up the door to well, what was

14   Ms. Quan's response to Mr. Focus about this, and

15   what was Mr. Focus's response back.  So they're

16   going to try to argue that as of 2012 we new we

17   were willfully infringing because they sent us a

18   claim chart on one claim, claim 30 of one of the

19   patents at issue in this case.  And that's

20   clearly just prohibited under the rules for all

21   the reasons that the mischief that can be made

22   with that.

23             THE COURT:  Thanks, Ms. Brooks.

24   Who has got this discussion.

1              Mr. Hess.

2              MR. HESS:  So as an initial

3     matter, Your Honor, Rule 408 doesn't apply here

4     because, you know, as you know, it's to prove or

5     disprove the validity or amount of a disputed

6     claim.  There was no disputed claim at the time

7     of those communications.

8              THE COURT:  They were -- when you

9     say there was none, even if those Texas actions

10    had been dismissed, these folks were talking not

11    because they liked each other and because they

12    just wanted to get together, it was because

13    there was a concern about ongoing litigation and

14    disputes, wasn't it?  What other explanation was

15    there for this document except that they had a

16    dispute, even if there wasn't a specific

17    litigation to which it was attached at that

18    particular moment in time?  What reason would

19    exist for having this communication at all but

20    for the existence of a dispute?

21             MR. HESS:  As Mr. Focus admitted,

22    they were in furtherance of settlement

23    negotiations.

24             THE COURT:  Then why doesn't 408

```
1    just tell us pretty directly, bad idea to let

2    that in?

3              MR. HESS:  As we understand it,

4    Rule 408 is limited to prove or disprove the

5    validity or the amount of an active claim.  At

6    this point in time there was no active claim.

7    Putting aside the issue of Rule 408 --

8              THE COURT:  How can you put that

9    aside?

10             MR. HESS:  I want to make a point

11   on notice as opposed to willfulness.  There is a

12   damages requirement under the marking statute

13   that we show notice of the patents.  And we're

14   using this communication as the first date of

15   notice.

16             THE COURT:  They said -- now, for

17   willfulness purposes, perhaps they're saying

18   only -- I don't know, they can speak to it, but

19   I thought I heard Ms. Brooks just say we have

20   admitted we knew about these in 2006.

21             MR. HESS:  No.  To extent there is

22   not going to be an issue as to notice or the

23   date of notice based on this communication, then

24   I think we're fine with keeping this exhibit
```

```
 1    out, unless Microsoft comes back and says that
 2    Parallel Networks did not contact or reach out
 3    to Microsoft before filing the lawsuit.
 4                    THE COURT:  Why don't you stay
 5    right there, Mr. Hess, and I'll ask Ms. Brooks
 6    to stand up at the table.  Did I understand you
 7    right when you said we admit we had notice of
 8    this in 2006?
 9                    MS. BROOKS:  Correct, Your Honor,
10    we had filed an interrogatory response to that
11    effect.
12                    THE COURT:  I think you're good.
13    I'm granting the motion.  I think it's a 408
14    problem, so the E-mail is not coming in.  But
15    you have got your notice admission, and you can
16    run to town with that.  Okay?
17                    Ms. Hufnal.
18                    MS. HUFNAL:  Your Honor, Microsoft
19    filed a motion for leave to file a fifth motion
20    in limine just last week.  If I could address
21    that with the Court.
22                    THE COURT:  You can.
23                    MS. HUFNAL:  Thank you, Your
24    Honor.
```

```
 1                  So this motion, as to the
 2      timeliness, I think the only substantive
 3      response that Parallel set out was that all
 4      motions in limine are supposed to be in the
 5      pretrial order and we certainly recognize and
 6      put four of our five motions in limine in there.
 7      The reason we moved to file our fifth after the
 8      pretrial order was because in the interim, two
 9      things happened, Your Honor ruled on summary
10      judgment Daubert, and then we had a meet and
11      confer with Parallel Networks where we were a
12      little surprised by their responses as it
13      related to whether or not total revenue of
14      Windows Server should come in before the jury.
15                  So after Your Honor ruled on the
16      Isaacson survey coming out, we approached
17      Parallel Networks we said as a result, the total
18      revenue number should be out because you have no
19      way to apportion.  I'm putting aside because of
20      Your Honor's ruling today the second half of our
21      motion in limine is moot because they now have
22      an opportunity to do an apportionment analysis
23      with Mr. Bone's new opinion.
24                  The first half, however, which
```

```
 1          came to light in light of this discussion is

 2          still relevant, and that is Parallel's position

 3          that they have a direct infringement theory

 4          against Microsoft for Microsoft simply having,

 5          actually making the IIS and the ARR, even though

 6          they exist on two separate servers.

 7                    So I want to take one step back

 8          because there are several theories of

 9          infringement that have been vetted throughout

10          this case and that is indirect infringement

11          against Microsoft for its customers use of ARR

12          with IIS to do the accused methods and then the

13          computer readable software claims as well.

14          Certainly vetted.

15                    There is a direct infringement

16          claim against Microsoft for Microsoft's use of

17          IIS with ARR in support of its websites.  Those

18          are the accused websites, direct infringement.

19                    There is also in the expert

20          report, and I'm happy to show it to Your Honor,

21          a statement where their expert says we

22          internally used and tested, so they have a

23          direct infringement claim against Microsoft for

24          the testing of IIS and ARR, there is no damages
```

```
 1    theory based on that claim.

 2                    What was never disclosed or

 3    argued, articulated by their expert was what

 4    they are now trying to say, and for the first

 5    time have laid out in this opposition to the MIL

 6    which is the relevant infringement theory is

 7    based on Microsoft's making of Windows Server

 8    and ARR.  That was not disclosed and we were

 9    surprised to learn that they were still

10    asserting a direct infringement theory that

11    would result in the server, Microsoft Server

12    numbers coming in front of the jury.

13                    So Your Honor, this is from their

14    expert report, an excerpt from the appendix of

15    their expert report.  The whole section called

16    Acts of Infringement under 271(a), direct

17    infringement, and it goes on to explain what

18    those theories are for IIS and ARR, and the

19    first is basically a catch all sentence.

20                    Then, Your Honor, he says, I

21    described the infringement of IIS servers and

22    ARR previously installed, that's the user.  I

23    described IIS with ARR installed internally for

24    Microsoft.  That's the website.  And he goes on,
```

 1      and the next two paragraphs, and Your Honor,

 2      this document is attached to Parallel's

 3      opposition, DI-375, the declaration in support

 4      thereof, DI-376, and after talking about the

 5      websites, paragraph 213, which is the last

 6      paragraph in this direct infringement section,

 7      says Microsoft also uses IIS and ARR via its

 8      internal use and testing.

 9              That word making, that theory of

10      Microsoft directly infringing just by having

11      over here on one server in Washington state the

12      IIS code and another server in Puerto Rico the

13      ARR code, so two separate products and the

14      claims are directed to the combination, but

15      they're saying we directly infringe just by

16      having these, we certainly would have moved for

17      summary judgment as a matter of law on that

18      issue had we known that it was in the case, but

19      this is a new development in light of Your

20      Honor's taking Windows Server out of the cases

21      for direct infringement.

22              So our motion in limine is to

23      preclude them from introducing -- this is now

24      another late theory that we would have to deal

```
 1        with in the case.

 2                      Thank you, Your Honor.

 3                      THE COURT:  Okay.  I got you.

 4        Let's just deal with one part right here.  I'm

 5        granting the motion to hear your motion in

 6        limine number five.  All right?  And you have

 7        addressed the substance of it.

 8                      Who is going to respond to the

 9        substance?

10                      MR. BOVENKAMP:  I will, Your

11        Honor.

12                      Well, it's not coming up, but let

13        me --

14                      THE COURT:  I hope I have

15        communicated to you guys effectively I'm aware

16        of your arguments, I have been paying attention,

17        I got the brief right in front of me.

18                      MR. BOVENKAMP:  What I wanted to

19        put up to address the last point that was made

20        first was just the nature of what's claimed so

21        we're all on the same page about that, because I

22        don't know that was necessarily fully briefed.

23                      So this is the preamble to the

24        computer readable medium claims as we call them.
```

1    And the point was made to Your Honor by

2    Ms. Hufnal, there is this one piece over here

3    and this one piece over there.  How is that

4    possibly something that infringes?  Well, it's

5    because the claim in its plain and ordinary

6    meaning allows that read to be made on their

7    software.

8              THE COURT:  Here is the thing, I'm

9    not really focused on the merits of this, I'm

10   not treating this like a summary judgment

11   motion, I have got in front of me a motion in

12   limine which says specifically this is coming

13   out of left field.  They didn't put it in this

14   case.  This is a response to the Court's ruling.

15   They're trying to pull Windows Server back into

16   it because it means big numbers for them, don't

17   let them do it, it's not fair, it's not right.

18   She said it more eloquently than that, but

19   that's what you need to do.

20             MR. BOVENKAMP:  Fair enough.  This

21   is from the body of Dr. Jones' report.  This is

22   paragraph two.  I don't know how more clearly he

23   could say it here in the sentence I have

24   bracketed.  "Microsoft directly infringes based

 1    upon operation and or sales of Windows Server

 2    including IIS and ARR components."  So right

 3    there he's identifying that.  If you track

 4    through that language, making of the accused

 5    products.  So in his introduction to his report,

 6    there is no bones about the fact that he is

 7    arguing that direct infringement includes their

 8    making of the accused product.

 9              Let's go forward.  So this is the

10    part that Ms. Hufnal also referenced.  This is

11    in the page before is this acts of infringement

12    section.  So at this point he's gone through all

13    the analysis of the software, et cetera, and he

14    says this, "Microsoft," -- and she characterized

15    this as boilerplate, but he says, "Microsoft has

16    and continues to make IIS and ARR," et cetera.

17    So again, we have that same statement made.

18              Drop down to 211, I'll skip over

19    everything except what I have underlined.  It

20    states, "Microsoft writes the code for IIS and

21    Application Request Routing and places this code

22    on its own servers."

23              Okay?  That's them writing the

24    code that we analyzed, Dr. Jones analyzed,

```
 1        writing the code for ARR, placing it on their

 2        servers.  That's the making.  That's him

 3        disclosing what the theory is.

 4                    Let's go and take a look at claim

 5        20.  There is argument by Microsoft that claim

 6        20, it just regurgitates, that's the machine

 7        readable claim, it just regurgitates what was

 8        said for the other claims, but that's not true.

 9        Claim 20 directed to machine readable medium,

10        Microsoft IIS and ARR software products are

11        embodied on machine readable medium as stored

12        sequences of instruction.  For example, IIS is

13        included in Windows Server clients and ARR

14        downloaded for Microsoft Redmond Data Center.

15                    So they may disagree about whether

16        that's true or not, but he unequivocally says

17        here and other places that we have just gone

18        through, that they're making, their placing of

19        that code on servers is an act of infringement.

20                    So for them to act like they're

21        surprised by this, I mean, I understand why

22        they're doing it, but his report can't be

23        clearer as far as addressing and arguing that

24        direct infringement based upon making, based
```

1      upon placing that code on the server, is an act

2      of infringement.

3                  THE COURT:  Well, it probably

4      could be clearer.  That's really not the point.

5      The question is, is it clear enough?  And I take

6      your argument.

7                  Okay.  Ms. Hufnal.

8                  MS. HUFNAL:  Your Honor, so

9      paragraph two and paragraph 210 that counsel

10     showed you, the kind of catchall statutory

11     language about direct infringement, again, there

12     is an allegation of direct infringement for

13     Microsoft using IIS and ARR to support its

14     websites, so in that -- that language doesn't do

15     anything to distinguish or identify for us that

16     there is some other direct infringement -- and

17     the website, that was clearly pages and pages of

18     expert reports dealt with that, damages theory

19     addressed to that.  There was nothing in those

20     catchall phrases that tells us there is some

21     other direct infringement theory based on just

22     the making of the Windows Server.

23                 THE COURT:  When you say there was

24     nothing to tell us that, respond directly, other

 1    than saying that's boiler plate or those are

 2    catchall phrases, when they say they make it,

 3    they write the IIS code and they import the ARR

 4    code from Redmond, Washington, if I'm

 5    remembering that correctly, Mr. Bovenkamp says

 6    that's it, that's a statement of infringement

 7    and it's in his report and if they wanted to

 8    move on it, they could have moved on it, what's

 9    your answer to that?

10              MS. HUFNAL:  Okay.  So I have two

11    answers.  First, in terms of -- well, let me

12    start with this machine readable media, because

13    that's the paragraph 164 that he's showing you,

14    they're relying on claim 20, there is two other

15    machine readable claims, but in the report just

16    to relate back to this discussion here, it's

17    really about disclosure and fair notice to us to

18    be able to respond.  So this paragraph that

19    Mr. Bovenkamp showed you, paragraph 164, we

20    agree that IIS is on a machine readable media,

21    it's on a server at Microsoft.

22              And ARR we agree it's downloaded

23    from our Redmond data server, those are factual

24    statements.  He goes on to talk about Bing and

1      Front Door and those are the websites.

2                  Your Honor, the next page, these

3      are all kind of factual statements, the next

4      page where he talked about element 20(a) where

5      he's now doing his analysis, the accused machine

6      readable mediums discussed in this report, there

7      are a sequence of instructions that caused the

8      Microsoft computer systems to route requests.

9      This is what their expert was doing his

10     infringement analysis on.  When you put IIS and

11     ARR and you do this computer system with page

12     servers, that is what he is analyzing.  When I

13     went on the computer system it's on the machine

14     readable media, but there was never a statement

15     that back sitting on the shelves at Microsoft

16     that in two different data centers or two

17     different servers, that just making is an act of

18     infringement.

19                  There is no damages theory based

20     on that, either.  The damages theory is all on

21     the use by the customers.

22                  If I may, Your Honor, to support

23     our position of our true surprise on this, in

24     Microsoft's brief in support of its motion for

 1          summary judgment which is DI-288, we set out for
 2          example, Windows Server is an operating system.
 3          It is not alleged to infringe in its own right.
 4          These were statements.  We didn't move on this,
 5          because we had no idea that this was theory.
 6          Windows Server when running IIS with the ARR,
 7          that is what is accused to infringe.  We put
 8          this in our summary judgment motion.
 9                    In response, Parallel Networks
10          never disputed that.  They never brought up the
11          theory of oh, yes, when the server is accused to
12          infringe.  In fact, they jump right to -- this
13          is Parallel Networks's brief DI-312, Dr. Jones
14          provided multiple basis for his findings of
15          direct infringement by Microsoft's customers.
16                    This is not something -- they
17          definitely could have raised and put us on
18          notice, we would have raised this in a summary
19          judgment if we had notice.
20                    One final point, Your Honor, if
21          there were any doubt, we asked their expert,
22          their technical expert at deposition, I have an
23          excerpt here on the backdrop of the United
24          States, but we asked him, does Windows Server as

1    packaged or distributed by Microsoft and before

2    it's installed on the computer satisfy the claim

3    on the patents of the asserted claims?  Well, as

4    a method claims that the software can't -- I

5    don't know if the word is computer readable

6    media, but for those claims my recollection is

7    on its own, no, but I would need to look back.

8              We had no notice of this.  Even if

9    it's somehow buried in their expert report and

10   we asked their expert about it and he said no,

11   they don't, this is incredibly unfair for them

12   to be morphing now a theory of direct

13   infringement to be bringing these large damages

14   numbers.

15             THE COURT:  Why don't you stay

16   right there for a minute.

17             Mr. Bovenkamp, I'm going to ask

18   you to respond to the assertion that there is no

19   damages theory associated with this, even if you

20   had this, there is nothing to support the

21   damages associated with this.

22             MR. BOVENKAMP:  Right.  So with

23   regards to that, Your Honor, if you go to --

24   this is attached to our -- I think opposition to

```
1     Microsoft's motion for leave to submit the MIL,

2     section 5.1 of the report, there is an entire

3     analysis on Microsoft's distribution sale of the

4     accused products, among other things.

5                    THE COURT:  What exhibit are you

6     looking at?

7                    MR. BOVENKAMP:  Let me get it to

8     you.  This is our opposition.

9                    THE COURT:  I'm holding it.

10    That's got all the exhibits; correct?

11                   MR. BOVENKAMP:  Right.

12                   THE COURT:  Which exhibit is it?

13                   MR. BOVENKAMP:  Let me flip

14    through here and make sure I have got the right

15    one.  It is Exhibit 4.

16                   THE COURT:  They're lettered for

17    me.  Is that exhibit D, expert report of

18    Dr. Mark Jones?

19                   MR. BOVENKAMP:  Yes.

20                   THE COURT:  Okay.

21                   MR. BOVENKAMP:  And then it's

22    Section 5.1 of his appendix.

23                   THE COURT:  All right.  So we're

24    in DI-376, Exhibit D, and for me, that is a
```

```
 1    one-page document.  And it says 1.1, Summary of
 2    Opinions.  Have I got the wrong thing?
 3                THE BOVENKAMP:  Yes.  I'm sorry.
 4    It is Exhibit 4.  So this is attached to our
 5    response -- this is attached to 376.
 6                THE COURT:  I'm holding 376 in the
 7    form you gave it to me.  It's got Exhibits A, B,
 8    C, D, E, F and G.  Now, I acknowledge being
 9    technologically challenged, but I don't see
10    Exhibit 4 here, so I don't know what you're
11    talking about.
12                MS. KRAMAN:  May I approach, Your
13    Honor, and take a look what you're holding and
14    make sure it's the same thing.
15                THE COURT:  I'll hand it to the
16    clerk.  This is marked as DI-376.
17                MR. BOVENKAMP:  It should have
18    Justin's declaration.  I don't know how the
19    numbering got off.
20                MS. KRAMAN:  I apologize.
21                THE COURT:  So we're looking at
22    Exhibit E -- hold on just a moment.  Ms. Hufnal,
23    do you have that?
24                MS. HUFNAL:  I do have it, Your
```

1        Honor.

2                    THE COURT:  Go ahead,

3        Mr. Bovenkamp.

4                    MR. BOVENKAMP:  So it's

5        particularly Exhibit E that you have, it's

6        Section 5.1 which is the appendix of Dr. Jones'

7        expert report.

8                    THE COURT:  Right.

9                    MR. BOVENKAMP:  And right there

10       from paragraphs 186 through appears to be 208,

11       and there is some things in there other than

12       Window Servers, there is some share point things

13       related in there.  He's basically provided an

14       analysis of based upon this storing of the data

15       on Microsoft servers, how did those things get

16       distributed.  This goes back again to the

17       software being distributed both in the United

18       States and being distributed elsewhere.  Certain

19       servers of Microsoft depending on where they're

20       located serve certain countries.

21                   So what he's discussing here is

22       the fact that based upon the information that's

23       stored, in other words, made by Microsoft stored

24       in these servers, that's the act of

```
 1      infringement, based upon those acts of

 2      infringement, it's then distributed, i.e., sold

 3      by Microsoft throughout the country.

 4                  So Bone then takes that analysis

 5      in his analysis that we've discussed at length

 6      here today and otherwise is based upon those

 7      acts of infringement.

 8                  THE COURT:  All right.  This

 9      started with me asking, do you have a damages

10      theory associated with this?

11                  MR. BOVENKAMP:  Yes, Your Honor.

12                  THE COURT:  So tell me about the

13      damages theory.  Where does Dr. Bone say hey, I

14      have had discussions with Dr. Jones, and this is

15      the damages attributed to the fact that

16      Microsoft not selling it and not offering

17      servers to third parties, but Microsoft having

18      IIS and having ARR is infringing and this is how

19      much money that's worth.  What do you got on

20      that?

21                  MR. BOVENKAMP:  I'll defer to some

22      extent to Mr. Campbell who may be able to point

23      to more specifically portions of his report, but

24      at a high level the analysis is the same for
```

```
 1     Dr. Bone --
 2               THE COURT:  How could that
 3     possibly be the case, Mr. Bovenkamp?  How could
 4     it be the case that having ruled on summary
 5     judgment that you don't have a direct
 6     infringement case in offering the services of a
 7     third party, that the existence of this stuff on
 8     the Microsoft server by itself is still all the
 9     same.  It is the same.
10               MR. BOVENKAMP:  Because
11     necessarily, Your Honor --
12               THE COURT:  The damages are the
13     same.
14               MR. BOVENKAMP:  Necessarily before
15     the stuff gets sent and implemented by the
16     customer, it exist.
17               THE COURT:  I know it exist, I
18     mean, nobody is disputing that it exist.  What
19     I'm trying to get from you is a logical argument
20     that can actually support the assertion that
21     Dr. Bone's existing damages report will support
22     the same number for damages with none of the
23     third-party services in it as it did when it was
24     supposedly taking account of damages for all of
```

1    what you were saying Microsoft sold, because

2    what you're really saying is if I accept that,

3    when Dr. Bone's said this is how much it's worth

4    to sell this stuff to third parties, that he was

5    just full of it, that it didn't mean anything,

6    that is really worth nothing, it adds nothing to

7    what Microsoft would have to pay in the way of

8    damages if it sold nothing to anybody, that's

9    what you're telling me, and that's pretty hard

10   to swallow.

11              MR. BOVENKAMP:  I don't think

12   that's what I'm telling you.  What I'm telling

13   you is alternative is probably too strong of a

14   word to use it, but there is mutually exclusive

15   theories that are being presented.  There is

16   claims that covered a method of infringement.

17   There is claims that cover a computer readable

18   medium.  And Mr. Bone is not going to get -- if

19   he went to the stand and opined, oh, Microsoft

20   gets value for selling it to third parties, but

21   they also get some sort of value for having it

22   on their servers, he would probably be laughed

23   out of court on those basis.  But those two

24   things are intricately related.  So what I'm

1    saying is that it's almost impossible to

2    separate between what's on the server and their

3    sales and the inducement or acts of contributory

4    infringement that were the focus of the case

5    prior to the survey being excluded.

6              So in other words, when the survey

7    was still in the case, I think it's fair to say

8    that his theory is on the software, and so the

9    software is what matters.  When the survey was

10   in the case, the infringement proof in the case

11   was focused on the use.  When the survey is not

12   in the case, we still have the exact same

13   software as being sold to customers and being

14   used by customers, but now how they use it is

15   still -- isn't relevant to some degree.  He

16   still has to take account, he still has to

17   apportion in his damages theory, he still has to

18   do the magic that damages experts do, but the

19   fact of the matter is that in order to enable

20   them to sell exactly the same software they sold

21   to customers, it had to be put on their server.

22   That's how they designed their system, put it on

23   their servers, distribute it to everybody.  So

24   their sales that he opined on in both cases stem

1        from that.

2                    THE COURT:  So do I hear you

3        saying, maybe I'm misunderstanding and if I am,

4        I apologize.  Do I hear you saying to me yeah,

5        we understand that Dr. Isaacson's report is out,

6        we don't agree with it, but it's out, that's for

7        another day, but we should still get -- we

8        should still be able to argue to the jury that

9        the value of having this is the same because

10       even though we can't talk about what's going on

11       with third parties because that's out of the

12       case, we're still -- I apologize, should I let

13       Mr. Campbell take the ball?

14                    MR. BOVENKAMP:  Perhaps.

15                    MR. CAMPBELL:  Because I feel like

16       there is something that's way off, because it

17       would make no sense to have it be otherwise.

18                    So it is still in the case that

19       Microsoft sales of this product are an act of

20       direct infringement.  I don't hear them saying

21       they don't have fair notice of that.

22                    So now Mr. Bone has got to do a

23       damages analysis and he understands from

24       Mr. Jones' they infringe from making and they

```
 1    infringe from selling.
 2               THE COURT:  Right.
 3               MR. CAMPBELL:  The value of them
 4    selling is the same as the value of them making,
 5    because you're not -- it would be pretty
 6    ridiculous, although maybe there is a fact
 7    there, to say there is some great value for
 8    making it and throwing it on their servers,
 9    that's an act of infringement.
10               THE COURT:  Right, that's what I
11    hear them saying, you don't have any damages
12    theory associated with them just making it, what
13    you got is a sales theory.  Right?
14               MR. CAMPBELL:  I don't understand
15    -- they're one in the same.  No damages expert
16    teases those apart because you would say the
17    value of them making is the value they get from
18    then selling, but those happen to be under 271
19    two separate acts of infringement, but the value
20    of them is the same value.
21               THE COURT:  It's the same value.
22    I need you to respond -- well, you know what,
23    Ms. Hufnal, instead of me assuming what you're
24    going to say, why don't you say what you're
```

1     going to say, and then I can see -- ask

2     Mr. Campbell for a response.  Your response to

3     what he's just said, please.

4               MS. HUFNAL:  Yes.  I think I have

5     to disagree that we do not think that

6     Microsoft's sale of IIS and separate providing

7     of the download for ARR is an act of direct

8     infringement.  That is what we're saying.  In

9     their brief they have coined it as make, but

10    whether you call it make or sale, that was never

11    disclosed or provided to us as a basis.  It was

12    always -- it would be like me, I'm a company, I

13    sell widget A and I sell widget B.  If widget A

14    is on shelf three and widget B is on shelf one

15    and the claim is directed to the combination, a

16    combination of A plus B, how am I a direct

17    infringer by selling these two things

18    separately?  I may be an indirect infringer,

19    that's the theory of indirect infringement.

20    What I'm saying is we were never put on notice

21    that the act of just having IIS in a server,

22    whether it's just by making, which is the very

23    clear one, it seems we're backing away from that

24    now, but even selling or providing it, that is

1     not direct infringement.  That was not the

2     theory of the case, it was indirect infringement

3     when the customers put them together to meet all

4     of the claim limitations.

5                 MR. CAMPBELL:  It's absolutely

6     direct infringement.  Just because you split it

7     up into two things doesn't get you out of the

8     making and selling of those things.  That's an

9     act of infringement.

10                THE COURT:  Well, here is what's

11    happening before my very eyes.  I'm getting a

12    summary judgment argument before my very eyes.

13    So this is -- is there anything else on our

14    table today?  Any other issues we got to deal

15    with?  I'm seeing heads shake and I don't think

16    sos coming all over the courtroom.  So let's

17    just get it on the record.

18                Mr. Bovenkamp, is there anything

19    else?

20                MR. BOVENKAMP:  There is nothing

21    else, Your Honor, besides what we're talking

22    about.

23                THE COURT:  All right.

24                Ms. Brooks.

```
 1                    MS. BROOKS:  No, Your Honor,
 2      nothing else.
 3                    THE COURT:  So this is the last
 4      thing we're dealing with.
 5                    Go ahead, Ms. Hufnal, there is
 6      clearly something you want to say.  I'll give
 7      you a few more words.
 8                    MS. HUFNAL:  In preparing for
 9      this, Your Honor, this is actually what I feared
10      would happen, because it's not fair to us for
11      not having an opportunity to brief this.  The
12      MIL that we brought that we were not put on
13      notice that this was a theory in the case.  And
14      the first time it was laid out in any kind of
15      notice was in their opposition to our motion in
16      limine, so --
17                    THE COURT:  How did you know to
18      file a motion in limine?
19                    MS. HUFNAL:  Because when Your
20      Honor ruled on no indirect infringement before
21      we knew they were going to supplement their
22      report, now the indirect infringement was out,
23      we said surely you all are not trying to put in
24      front of the jury that big total revenue number
```

```
 1    because you have no way of apportioning it.
 2    This was at the meet and confer.  And they said
 3    we are.  We're going to do a supplemental
 4    report, and that's when this came out.
 5              THE COURT:  So I guess this -- I'm
 6    already going to be taking a look at some
 7    additional briefing in the IBM case and you guys
 8    on the Parallel Networks are going to be double
 9    duty.  On the same schedule, I want this thing
10    briefed.  All right?  You go ahead, it's a
11    little bit different on this go around.
12              If what you're saying to me is
13    hey, we got a motion for summary judgment, if
14    this is in the case then it's not fairly in the
15    case, timeliness and substantively it makes no
16    sense, you go ahead and brief it, you file it by
17    a week from today.  You file your responsive
18    brief a week after that.  You got three days to
19    file your reply brief after that, Ms. Hufnal.
20    I'll take it under advisement.
21              And, you know, the very fact that
22    we're talking about this now makes me
23    suspicious, I got to tell you Parallel Networks
24    people, makes me suspicious, that --
```

```
 1                  MR. CAMPBELL:  Your Honor, can I

 2       --

 3                  THE COURT:  No, Mr. Campbell,

 4       restrain yourself.  All right?  Makes me

 5       suspicious that there is more than -- that maybe

 6       there is a little fire behind the smoke I see in

 7       the courtroom right now when the Microsoft

 8       people say we didn't know this thing was coming,

 9       makes me worry that there is something to what

10       they're saying.

11                  I can't sort it out and I'm not

12       going to try to sort it out in the courtroom

13       today.  All I know is there is a lot more than

14       motion in limine that's erupted in the courtroom

15       this afternoon.

16                  MR. CAMPBELL:  I apologize, but if

17       you're suspicious I have to speak as an officer

18       of the court.

19                  THE COURT:  You don't have to.

20                  MR. CAMPBELL:  But I feel like I

21       have to.  As an officer of the court, there was

22       nothing -- we weren't hiding anything.  I'm

23       really confused by the argument.  There was

24       nothing hidden.
```

```
 1              THE COURT:  I'll give you the
 2    argument, Mr. Campbell.  Here is the argument.
 3    The argument is we had full summary judgment
 4    briefing in this case.  There was plenty of
 5    stuff teed up.  If we had known that this was
 6    actually an argument that was going to be made,
 7    it would have been made as part of our summary
 8    judgment argument because we don't believe that
 9    there is a direct infringement from just having
10    these two different things out there.  All of
11    the discussion in the case was about these
12    things operating together to do load balancing
13    and send things out.  The existence of the two
14    of them in our system unrelated to the combining
15    of them by the customers once they get them,
16    just the existence of them by themselves as a
17    making constituting in and of itself an
18    infringement, we didn't know about it or we
19    would have talked about it.  It's not in his
20    report in any meaningfully sense.  We would have
21    talked about.
22              I don't find that argument hard to
23    grasp.  I understand you disagree with it, but
24    at this point you can both express your surprise
```

```
 1        in papers.  Saying I'm little suspicious is not
 2        casting aspersions on your honor, Mr. Campbell,
 3        it's just saying it looks to me like this is
 4        lawyers doing what lawyers do, which is after
 5        they get a decision they don't like saying I can
 6        still win, I can still win if they say X, Y and
 7        Z.  So now you're saying X, Y and Z, so we'll go
 8        ahead and hear what you have to say, get the
 9        briefing in to me, I'll -- I have looked at
10        this, I'll look at it again, I'll look at it in
11        the context of your response to their summary
12        judgment motion, and we'll take it on.
13                  I expect they'll be pointing out
14        all the stuff that shows hey, this came out of
15        left field and I'm sure you'll be pointing out
16        all the stuff that says oh, no, in response to
17        their contention interrogatories, we said this.
18        In response to deposition questions we said
19        this.  In response to their other discovery
20        request for production of documents and in our
21        expert reports we said these things all of which
22        should have told them this was a theory that was
23        in the case.  You'll have a chance to do that,
24        I'll take a look at it and give you a ruling.
```

1               Good enough.  Thanks.  Thanks for

2      your time today.  I'll look forward to getting

3      the documents from you folks and I'll get you a

4      ruling promptly so that people will know what,

5      if anything, of this last piece of our

6      discussion is still in the case.

7                     Thanks.  We're in recess.

8               (Court recessed at 3:15 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1    State of Delaware )
                      )
2    New Castle County )

3

4

5                    CERTIFICATE OF REPORTER

6

7         I, Dale C. Hawkins, Registered Merit

8    Reporter, Certified Shorthand Reporter, and Notary

9    Public, do hereby certify that the foregoing record,

10   is a true and accurate transcript of my stenographic

11   notes taken on March 13, 2017, in the above-captioned

12   matter.

13

14        IN WITNESS WHEREOF, I have hereunto set my

15   hand and seal this 13th day of March 2017, at

16   Wilmington.

17

18

19              /s/ Dale C. Hawkins

20            Dale C. Hawkins, RMR

21

22

23

24

**'335** [2] - 33:10, 34:1
**'554** [1] - 33:10
**/s** [1] - 68:19
**1.1** [1] - 52:1
**13** [2] - 1:10, 68:11
**13-2073-KAJ** [1] - 1:5
**13th** [1] - 68:15
**164** [2] - 47:13, 47:19
**186** [1] - 53:10
**20** [4] - 45:5, 45:6, 45:9, 47:14
**20(a** [1] - 48:4
**2006** [4] - 33:12, 33:15, 36:20, 37:8
**2012** [1] - 34:16
**2015** [5] - 26:21, 28:5, 29:1, 29:2, 33:8
**2017** [3] - 1:10, 68:11, 68:15
**208** [1] - 53:10
**20th** [1] - 33:8
**210** [1] - 46:9
**211** [1] - 44:18
**213** [1] - 41:5
**271** [1] - 59:18
**271(a** [1] - 40:16
**298** [1] - 25:10
**2:00** [1] - 1:10
**30** [2] - 33:24, 34:18
**30(b)(6** [1] - 28:14
**376** [2] - 52:5, 52:6
**3:15** [1] - 67:8
**4** [3] - 51:15, 52:4, 52:10
**403** [2] - 14:9, 18:12
**408** [9] - 33:2, 34:8, 34:9, 34:10, 35:3, 35:24, 36:4, 36:7, 37:13
**4B** [1] - 1:11
**5.1** [3] - 51:2, 51:22, 53:6
**50** [1] - 8:24
**844** [1] - 1:12
**abandonment** [1] - 33:12
**abilities** [1] - 23:23
**able** [4] - 21:4, 47:18, 54:22, 58:8
**above-captioned** [1] - 68:11
**absolutely** [2] - 10:22, 61:5
**abstract** [1] - 26:6
**accept** [1] - 56:2
**account** [2] - 55:24, 57:16
**accurate** [2] - 29:21, 68:10

**accused** [10] - 8:20, 9:4, 39:12, 39:18, 44:4, 44:8, 48:5, 49:7, 49:11, 51:4
**acknowledge** [1] - 52:8
**acknowledged** [1] - 25:14
**act** [10] - 45:19, 45:20, 46:1, 48:17, 53:24, 58:19, 59:9, 60:7, 60:21, 61:9
**Action** [1] - 1:5
**actions** [1] - 35:9
**active** [2] - 36:5, 36:6
**Acts** [1] - 40:16
**acts** [5] - 44:11, 54:1, 54:7, 57:3, 59:19
**add** [1] - 28:2
**added** [1] - 29:14
**additional** [1] - 63:7
**address** [6] - 8:12, 12:7, 12:20, 32:20, 37:20, 42:19
**addressed** [3] - 4:6, 42:7, 46:19
**addresses** [1] - 7:15
**addressing** [1] - 45:23
**adds** [1] - 56:6
**admissible** [1] - 33:5
**admission** [2] - 33:3, 37:15
**admit** [1] - 37:7
**admits** [1] - 27:13
**admitted** [2] - 35:21, 36:20
**admitting** [1] - 33:14
**advisement** [1] - 63:20
**afternoon** [9] - 3:1, 3:7, 3:12, 3:14, 7:5, 8:8, 15:24, 28:22, 64:15
**ago** [1] - 12:4
**agree** [3] - 47:20, 47:22, 58:6
**agreement** [4] - 32:23, 32:24, 33:4, 33:5
**ahead** [6] - 31:4, 53:2, 62:5, 63:10, 63:16, 66:8
**air** [1] - 30:7
**allegation** [1] - 46:12
**alleged** [1] - 49:3
**allowed** [4] - 20:23, 22:2, 29:4, 34:9
**allowing** [1] - 20:10
**allows** [1] - 43:6
**almost** [1] - 57:1
**alternative**

56:13
**amount** [2] - 35:5, 36:5
**analysis** [13] - 7:22, 9:19, 9:21, 38:22, 44:13, 48:5, 48:10, 51:3, 53:14, 54:4, 54:5, 54:24, 58:23
**analyzed** [2] - 44:24
**analyzing** [1] - 48:12
**Angela** [2] - 3:10, 28:23
**ANGELA** [1] - 1:20
**answer** [3] - 11:18, 26:15, 47:9
**answers** [2] - 26:5, 47:11
**apart** [1] - 59:16
**apologize** [5] - 7:1, 52:20, 58:4, 58:12, 64:16
**appeal** [3] - 19:21, 20:3, 20:9
**appear** [1] - 14:20
**APPEARANCES** [2] - 1:15, 2:1
**appendix** [3] - 40:14, 51:22, 53:6
**Application** [1] - 44:21
**application** [1] - 34:2
**applies** [3] - 22:21, 29:8, 29:10
**apply** [2] - 7:21, 35:3
**apportion** [2] - 38:19, 57:17
**apportioning** [1] - 63:1
**apportionment** [1] - 38:22
**apportionments** [1] - 7:24
**approach** [2] - 7:22, 52:12
**approached** [1] - 38:16
**appropriate** [1] - 5:10
**architecture** [1] - 34:2
**argue** [4] - 16:3, 34:6, 34:16, 58:8
**argued** [1] - 40:3
**argues** [1] - 33:2
**arguing** [5] - 6:23, 25:19, 25:21, 44:7, 45:23
**argument** [17] - 4:14, 16:5, 18:12, 19:6, 23:7, 30:2, 45:5, 46:6, 55:19, 61:12, 45:24,

65:6, 65:8, 65:22
**argumentative** [2] - 5:6, 5:9
**arguments** [11] - 20:14, 20:16, 20:19, 21:3, 21:14, 22:2, 23:2, 23:12, 30:2, 42:16
**ARR** [26] - 8:20, 8:22, 9:3, 27:17, 39:5, 39:11, 39:17, 39:24, 40:8, 40:18, 40:22, 40:23, 41:7, 41:13, 44:2, 44:16, 45:1, 45:10, 45:13, 46:13, 47:3, 47:22, 48:11, 49:6, 54:18, 60:7
**art** [2] - 21:10, 21:12
**articulated** [1] - 40:3
**aside** [3] - 36:7, 36:9, 38:19
**aspersions** [1] - 66:2
**asserted** [3] - 17:24, 27:23, 50:3
**asserting** [1] - 40:10
**assertion** [4] - 14:16, 17:3, 50:18, 55:20
**associated** [5] - 16:7, 50:19, 50:21, 54:10, 59:12
**assume** [1] - 31:4
**assuming** [1] - 59:23
**attached** [6] - 33:23, 35:17, 41:2, 50:24, 52:4, 52:5
**attacking** [2] - 22:21, 22:22
**attempt** [1] - 14:20
**attention** [2] - 5:14, 42:16
**attributable** [1] - 8:2
**attributed** [1] - 54:15
**available** [2] - 8:4, 10:19
**aware** [3] - 4:8, 33:9, 42:15
**backdrop** [1] - 49:23
**background** [1] - 32:6
**backing** [1] - 60:23
**bad** [2] - 16:9, 36:1
**balance** [1] - 18:12
**balancing** [2] - 9:2, 65:12
**ball** [3] - 21:20, 26:11, 58:13
**bar** [2] - 25:20
**based** [17] - 16:6, 18:19, 25:9, 29:22, 31:9, 36:23, 40:1, 45:24,

46:21, 48:19, 53:14, 53:22, 54:1, 54:6
**basis** [4] - 11:18, 49:14, 56:23, 60:11
**battling** [1] - 33:18
**became** [1] - 33:9
**BEFORE** [1] - 1:14
**begin** [1] - 4:4
**beginning** [1] - 5:16
**behalf** [2] - 6:14, 28:20
**behind** [3] - 3:10, 8:14, 64:6
**benign** [1] - 31:16
**better** [2] - 12:19, 16:4
**between** [2] - 22:9, 57:2
**big** [2] - 43:16, 62:24
**bind** [1] - 23:19
**binding** [1] - 23:18
**Bing** [1] - 47:24
**bit** [4] - 26:21, 27:8, 30:7, 63:11
**body** [1] - 43:21
**boiler** [1] - 47:1
**boilerplate** [1] - 44:15
**Bone** [2] - 54:4, 54:13
**bone** [7] - 6:11, 7:14, 10:4, 10:19, 55:1, 56:18, 58:22
**Bone's** [2] - 55:21, 56:3
**bone's** [5] - 7:8, 7:9, 29:6, 29:23, 38:23
**bones** [1] - 44:6
**bottom** [1] - 6:1
**BOVENKAMP** [23] - 1:20, 4:8, 32:3, 42:10, 42:18, 43:20, 50:22, 51:7, 51:11, 51:13, 51:19, 51:21, 52:3, 52:17, 53:4, 53:9, 54:11, 54:21, 55:10, 55:14, 56:11, 58:14, 61:20
**Bovenkamp** [3] - 3:10, 4:7, 32:1, 47:5, 47:19, 50:17, 53:3, 55:3, 61:18
**box** [1] - 55:22
**bracketed** [1] - 43:24
**Brazil** [1] - 27:17
**break** [1] - 55:22
**Bremse** [1] - 25:9
**brief** [10] - 19:7, 27:12, 42:17, 48:24, 49:13, 60:9, 62:11, 63:16, 63:18, 63:19
**briefed** [2] - 42:22, 63:10

**briefing** [5] - 13:4, 16:23, 63:7, 65:4, 66:9
**bring** [2] - 16:23, 22:13
**bringing** [1] - 50:13
**brings** [1] - 6:9
**BROOKS** [7] - 2:4, 30:15, 31:8, 32:18, 33:20, 37:9, 62:1
**Brooks** [7] - 3:15, 30:14, 32:16, 34:23, 36:19, 37:5, 61:24
**brought** [5] - 14:3, 15:17, 26:17, 49:10, 62:12
**burden** [1] - 10:14
**buried** [1] - 50:9
**business** [1] - 15:12
**BY** [11] - 1:17, 1:19, 1:20, 1:20, 1:21, 1:21, 2:4, 2:4, 2:5, 2:5, 2:6
**calculations** [1] - 8:15
**Campbell** [10] - 3:11, 7:3, 7:6, 9:24, 54:22, 58:13, 60:2, 64:3, 65:2, 66:2
**CAMPBELL** [14] - 1:21, 7:5, 7:11, 10:2, 10:22, 12:16, 13:14, 58:15, 59:3, 59:14, 61:5, 64:1, 64:16, 64:20
**captioned** [1] - 68:11
**case** [43] - 5:19, 12:14, 14:11, 14:12, 16:20, 18:14, 18:21, 19:11, 19:12, 19:16, 19:22, 19:23, 20:6, 20:23, 22:5, 26:7, 27:24, 32:7, 34:19, 39:10, 41:18, 42:1, 43:14, 55:3, 55:4, 55:6, 57:4, 57:7, 57:10, 57:12, 58:12, 58:18, 61:2, 62:13, 63:7, 63:14, 63:15, 65:4, 65:11, 66:23, 67:6
**cases** [8] - 8:16, 19:8, 19:13, 19:16, 19:17, 23:19, 41:20, 57:24
**casting** [1] - 66:2
**Castle** [1] - 68:2
**catch** [1] - 40:19
**catchall** [3] - 46:10, 46:20, 47:2
**caused** [1] - 48:7
**causing** [1] - 31:13
**Cawley** [1] - 3:9,

13:24, 14:16, 15:20
**CAWLEY** [5] - 1:19, 13:19, 13:23, 14:1, 15:1
**Center** [1] - 45:14
**centers** [1] - 48:16
**certain** [2] - 53:18, 53:20
**certainly** [6] - 12:24, 16:11, 27:14, 38:5, 39:14, 41:16
**certificate** [1] - 33:24
**CERTIFICATE** [1] - 68:5
**Certified** [1] - 68:8
**certify** [1] - 68:9
**cetera** [3] - 34:4, 44:13, 44:16
**challenged** [1] - 52:9
**challenges** [1] - 27:5
**chance** [4] - 29:23, 29:24, 30:8, 66:23
**changed** [3] - 10:4, 17:8, 18:17
**changes** [1] - 10:14
**changing** [1] - 8:15
**characterized** [1] - 44:14
**chart** [2] - 33:24, 34:18
**chat** [1] - 5:20
**checked** [1] - 27:1
**chose** [1] - 21:9
**Chris** [1] - 3:10
**CHRISTOPHER** [1] - 1:20
**cites** [1] - 19:8
**Civil** [1] - 1:5
**claim** [24] - 5:5, 22:3, 22:24, 33:23, 33:24, 34:18, 35:6, 36:5, 36:6, 39:16, 39:23, 40:1, 43:5, 45:4, 45:5, 45:7, 45:9, 47:14, 50:2, 60:15, 61:4
**claimed** [1] - 42:20
**claims** [12] - 27:18, 33:12, 39:13, 41:14, 42:24, 45:8, 47:15, 50:3, 50:4, 50:6, 56:16, 56:17
**clarification** [1] - 24:14
**clear** [4] - 6:19, 6:22, 46:5, 60:23
**clearer** [2] - 45:23, 46:4
**clearly** [4] - 34:20, 43:22, 46:17, 50:20

**clerk** [1] - 52:16
**client** [1] - 31:4
**clients** [1] - 45:13
**clueless** [1] - 33:18
**code** [10] - 41:12, 41:13, 44:20, 44:21, 44:24, 45:1, 45:19, 46:1, 47:3, 47:4
**coined** [1] - 60:9
**combination** [3] - 41:14, 60:15, 60:19
**combining** [1] - 65:14
**coming** [12] - 8:11, 12:14, 20:7, 21:13, 26:3, 37:14, 38:16, 40:12, 42:12, 43:12, 61:16, 64:8
**commercial** [4] - 14:23, 15:2, 16:24, 17:2
**communicated** [1] - 42:15
**communication** [3] - 35:19, 36:14, 36:23
**communications** [1] - 35:7
**company** [2] - 15:10, 60:12
**completed** [1] - 19:14
**completely** [1] - 20:4
**complicate** [1] - 23:8
**components** [1] - 44:2
**computer** [8] - 39:13, 42:24, 48:8, 48:11, 48:13, 50:2, 50:5, 56:17
**CONAWAY** [1] - 1:16
**concede** [1] - 18:15
**concern** [2] - 31:17, 35:13
**concerned** [1] - 18:19
**conclusions** [1] - 21:14
**conduct** [1] - 5:15
**confer** [2] - 38:11, 63:2
**conference** [2] - 26:22, 29:2
**confidence** [2] - 23:23, 23:24
**confident** [1] - 23:16
**confidentiality** [1] - 32:24
**confused** [1] - 64:23
**confusion** [1] - 31:14
**consider** [1] - 20:11
**considered** [1] - 32:8
**consistent** [1] - 29:14
**constituting** [1] -

**constraints** [1] - 8:10
**construction** [1] - 23:1
**consult** [1] - 10:15
**contact** [2] - 34:3, 37:2
**contention** [1] - 66:17
**context** [5] - 20:18, 27:4, 27:15, 30:6, 66:11
**CONTINUED** [1] - 2:1
**continues** [1] - 44:16
**continuing** [2] - 20:5, 20:9
**contrasting** [1] - 20:23
**contributory** [1] - 57:3
**convenience** [1] - 10:20
**conveniently** [1] - 9:8
**copy** [1] - 27:16
**CORPORATION** [1] - 1:6
**correct** [3] - 13:19, 37:9, 51:10
**correction** [1] - 34:1
**correctly** [2] - 17:16, 47:5
**counsel** [4] - 3:9, 8:12, 10:20, 46:9
**Counsel** [2] - 1:22, 2:8
**countries** [1] - 53:20
**country** [1] - 54:3
**County** [1] - 68:2
**couple** [4] - 12:10, 12:19, 20:15, 21:3
**court** [6] - 20:14, 23:13, 23:21, 56:23, 64:18, 64:21
**Court** [8] - 14:9, 14:12, 15:5, 22:24, 28:7, 30:17, 37:21, 67:8
**COURT** [86] - 1:1, 3:1, 3:12, 3:18, 4:10, 4:15, 4:20, 6:17, 6:24, 7:10, 8:5, 9:24, 10:12, 10:23, 11:17, 11:22, 12:17, 13:15, 13:21, 13:24, 14:15, 15:19, 15:23, 16:4, 16:17, 17:11, 17:15, 17:21, 18:2, 18:10, 19:1, 21:19, 22:6, 23:5, 23:22, 24:16, 26:13, 28:4, 28:18, 29:18, 31:1, 31:22, 32:10, 33:16, 34:23, 35:8, 35:24, 36:8, 36:16, 36:24, 37:12,

37:22, 42:3, 42:14, 43:8, 46:3, 46:23, 50:15, 51:5, 51:9, 51:12, 51:16, 51:20, 51:23, 52:6, 52:15, 52:21, 53:2, 53:8, 54:8, 54:12, 55:2, 55:12, 55:17, 58:2, 59:2, 59:10, 59:21, 61:10, 61:23, 62:3, 62:17, 63:5, 64:3, 64:19, 65:1
**Court's** [1] - 43:14
**courtroom** [4] - 61:16, 64:7, 64:12, 64:14
**Courtroom** [1] - 1:11
**cover** [1] - 56:17
**covered** [3] - 11:8, 25:5, 56:16
**crack** [1] - 30:4
**crafted** [1] - 22:1
**cross** [2] - 24:7, 24:18
**cross-examined** [2] - 24:7, 24:18
**current** [1] - 15:8
**customer** [1] - 55:16
**customers** [8] - 39:11, 48:21, 49:15, 57:13, 57:14, 57:21, 61:3, 65:15
**Dale** [3] - 68:7, 68:19, 68:20
**damages** [25] - 4:19, 7:22, 9:17, 28:2, 36:12, 39:24, 46:18, 48:19, 48:20, 50:13, 50:19, 50:21, 54:9, 54:13, 54:15, 55:12, 55:21, 55:22, 55:24, 56:8, 57:17, 57:18, 58:23, 59:11, 59:15
**darn** [1] - 12:13
**Data** [1] - 45:14
**data** [3] - 47:23, 48:16, 53:14
**date** [2] - 36:14, 36:23
**Daubert** [11] - 11:16, 11:24, 12:9, 13:4, 27:5, 27:11, 29:4, 29:16, 29:24, 30:2, 38:10
**days** [1] - 63:18
**deadline** [1] - 27:21
**deal** [11] - 9:18, 10:10, 24:22, 24:23, 25:16, 26:8, 26:9, 30:22, 41:24, 42:4, 61:14
**dealing** [4] - 8:22, 15:4, 30:6, 62:4
**deals** [1] - 32:21

**dealt** [2] - 31:17, 46:18
**decided** [1] - 26:24
**decision** [6] - 20:12, 20:18, 21:1, 23:4, 23:18, 66:5
**declaration** [4] - 24:15, 24:17, 41:3, 52:18
**declarations** [1] - 24:24
**Defendant** [1] - 1:7
**defendant** [1] - 6:11
**Defendants** [1] - 2:8
**defer** [1] - 54:21
**definitely** [2] - 31:13, 49:17
**definition** [1] - 31:11
**definitions** [1] - 31:6
**definitive** [1] - 27:3
**degree** [1] - 57:15
**DELAWARE** [1] - 1:2
**Delaware** [2] - 1:12, 68:1
**denied** [5] - 19:19, 19:20, 28:8, 28:15, 30:11
**denying** [1] - 28:15
**deposition** [8] - 10:19, 11:4, 13:6, 24:10, 24:22, 28:14, 49:22, 66:18
**described** [3] - 23:24, 40:21, 40:23
**designed** [1] - 57:22
**determined** [1] - 7:20
**determining** [1] - 12:13
**development** [3] - 14:19, 16:24, 41:19
**DI-288** [1] - 49:1
**DI-312** [1] - 49:13
**DI-375** [1] - 41:3
**DI-376** [3] - 41:4, 51:24, 52:16
**difference** [3] - 11:13, 17:22, 22:8
**different** [11] - 9:5, 9:7, 11:19, 17:7, 21:17, 22:11, 48:16, 48:17, 63:11, 65:10
**dire** [5] - 4:1, 4:22, 5:2, 5:10, 14:5
**direct** [23] - 39:3, 39:15, 39:18, 39:23, 40:10, 40:16, 41:6, 41:21, 44:7, 45:24, 46:11, 46:12, 46:16, 46:21, 49:15, 50:12, 55:5, 58:20, 60:7, 60:16, 61:1, 61:6,

65:9
**directed** [3] - 41:14, 45:9, 60:15
**directly** [6] - 32:20, 36:1, 41:10, 41:15, 43:24, 46:24
**disagree** [3] - 45:15, 60:5, 65:23
**disclosed** [3] - 40:2, 40:8, 60:11
**disclosing** [1] - 45:3
**disclosure** [1] - 47:17
**discovery** [3] - 27:21, 28:11, 66:19
**discussed** [4] - 7:19, 30:12, 48:6, 54:5
**discussing** [1] - 53:21
**discussion** [7] - 22:18, 26:7, 34:24, 39:1, 47:16, 65:11, 67:6
**discussions** [2] - 34:9, 54:14
**dismissed** [1] - 35:10
**disprove** [2] - 35:5, 36:4
**dispute** [4] - 15:9, 28:11, 35:16, 35:20
**disputed** [3] - 35:5, 35:6, 49:10
**disputes** [1] - 35:14
**disputing** [1] - 55:18
**distinction** [1] - 17:22
**distinguish** [1] - 46:15
**distribute** [1] - 57:23
**distributed** [5] - 50:1, 53:16, 53:17, 53:18, 54:2
**distribution** [1] - 51:3
**district** [1] - 23:21
**DISTRICT** [2] - 1:1, 1:2
**document** [4] - 12:1, 35:15, 41:2, 52:1
**documentation** [2] - 7:17, 7:23
**documents** [2] - 66:20, 67:3
**done** [9] - 9:20, 10:8, 13:7, 13:8, 19:15, 20:4, 20:7, 20:10, 21:2
**Door** [1] - 48:1
**door** [3] - 26:1, 26:8, 34:13
**doors** [1] - 25:13
**double** [1] - 63:8
**doubt** [1] - 49:21
**Doug** [1] - 3:9
**DOUGLAS** [1] - 1:19
**down** [4] - 8

26:2, 44:18
**download** [2] - 8:23, 60:7
**downloaded** [3] - 27:16, 45:14, 47:22
**downloading** [1] - 9:3
**Dr** [12] - 29:23, 43:21, 44:24, 49:13, 51:18, 53:6, 54:13, 54:14, 55:1, 55:21, 56:3, 58:5
**draft** [1] - 23:14
**dragging** [1] - 10:17
**draw** [1] - 11:23
**drop** [1] - 44:18
**during** [3] - 14:5, 22:2, 32:8
**duty** [1] - 63:9
**E-mail** [4] - 32:21, 33:17, 34:7, 37:14
**Eagle** [2] - 19:11, 19:16
**effect** [2] - 23:18, 37:11
**effectively** [1] - 42:15
**effort** [2] - 8:3, 16:9
**efforts** [1] - 15:11
**either** [3] - 20:21, 25:11, 48:20
**Electronics** [2] - 19:12, 19:17
**element** [1] - 48:4
**eloquently** [1] - 43:18
**elsewhere** [1] - 53:18
**embodied** [1] - 45:11
**emphasis** [1] - 31:19
**enable** [1] - 57:19
**encouraging** [1] - 20:12
**end** [5] - 10:17, 12:24, 13:1, 29:15, 30:20
**ended** [1] - 27:4
**entered** [1] - 33:4
**entire** [1] - 51:2
**entities** [1] - 17:7
**entity** [2] - 14:6, 14:21
**equation** [1] - 14:8
**erupted** [1] - 64:14
**ESQ** [11] - 1:17, 1:19, 1:20, 1:20, 1:21, 1:21, 2:4, 2:4, 2:5, 2:5, 2:6
**essentially** [3] - 7:13, 27:19, 27:24
**estopped** [1] - 22:17
**estoppel** [3] - 22:10, 22:21
**estoppels** [2] - 22:16
**et** [3] - 34:3, 44:13,

**eve** [1] - 12:1
**evidence** [1] - 20:21
**exact** [1] - 57:12
**exactly** [5] - 7:10, 20:7, 21:6, 34:11, 57:20
**examined** [2] - 24:7, 24:18
**example** [2] - 45:12, 49:2
**excellent** [1] - 11:7
**except** [3] - 13:8, 35:15, 44:19
**excerpt** [2] - 40:14, 49:23
**exclude** [1] - 14:4
**excluded** [1] - 57:5
**exclusive** [1] - 56:14
**Exhibit** [5] - 51:15, 51:24, 52:4, 52:10, 52:22, 53:5
**exhibit** [4] - 36:24, 51:5, 51:12, 51:17
**exhibits** [1] - 51:10
**Exhibits** [1] - 52:7
**exist** [5] - 35:19, 39:6, 55:16, 55:17, 55:18
**existence** [4] - 35:20, 55:7, 65:13, 65:16
**existing** [1] - 55:21
**expect** [7] - 10:18, 13:3, 13:5, 13:12, 25:19, 25:21, 66:13
**expert** [29] - 4:12, 4:18, 4:19, 6:21, 7:9, 9:18, 9:21, 27:13, 27:20, 27:22, 28:9, 28:16, 29:3, 30:7, 39:19, 39:21, 40:3, 40:14, 40:15, 46:18, 48:9, 49:21, 49:22, 50:9, 50:10, 51:17, 53:7, 59:15, 66:21
**experts** [3] - 10:15, 11:1, 57:18
**explain** [2] - 10:4, 33:16, 40:17
**explanation** [1] - 35:14
**express** [1] - 65:24
**extent** [6] - 10:23, 11:5, 12:8, 24:6, 36:21, 54:22
**extra** [1] - 21:13
**eyes** [2] - 61:11, 61:12
**face** [1] - 24:8
**faced** [1] - 16:5
**facing** [1] - 11:24
**fact** [16] - 14:11,

24:11, 25:1, 25:10, 27:7, 28:10, 44:6, 49:12, 53:22, 54:15, 57:19, 59:6, 63:21
**factual** [2] - 47:23, 48:3
**fair** [11] - 15:13, 17:4, 20:22, 22:18, 24:12, 43:17, 43:20, 47:17, 57:7, 58:21, 62:10
**fairly** [1] - 63:14
**faith** [2] - 12:18, 25:15
**Fallon** [1] - 28:12
**falsity** [1] - 15:15
**far** [2] - 18:19, 45:23
**feared** [1] - 62:9
**February** [1] - 33:7
**feet** [1] - 24:20
**few** [2] - 12:4, 62:7
**field** [2] - 43:13, 66:15
**fifth** [2] - 37:19, 38:7
**figure** [2] - 11:7, 23:11
**file** [12] - 6:13, 7:14, 11:15, 27:5, 28:16, 29:24, 37:19, 38:7, 62:18, 63:16, 63:17, 63:19
**filed** [6] - 10:7, 20:9, 27:20, 33:7, 37:10, 37:19
**filing** [1] - 37:3
**final** [6] - 6:5, 20:11, 20:18, 20:24, 23:3, 49:20
**finances** [1] - 16:7
**financing** [2] - 14:3, 15:17
**findings** [2] - 20:11, 49:14
**fine** [3] - 5:2, 5:4, 36:24
**FIORELLA** [10] - 2:5, 15:22, 15:24, 16:13, 16:22, 17:13, 17:18, 17:23, 18:8, 18:23
**Fiorella** [2] - 3:16, 15:23
**fire** [1] - 64:6
**first** [18] - 4:22, 5:4, 5:7, 7:3, 14:9, 15:2, 16:14, 19:1, 31:4, 33:6, 33:9, 36:14, 38:24, 40:4, 40:19, 42:20, 47:11, 62:14
**FISH** [1] - 2:3
**five** [4] - 5:8, 5:16, 38:6, 42:6
**FJC** [1] - 31:18
**flesh** [1] - 11:5
**flip** [1] - 51:13

**Focus** [2] - 32:21, 35:21
**focus** [4] - 27:14, 34:8, 34:14, 57:4
**focus's** [1] - 34:15
**focused** [2] - 43:9, 57:11
**folks** [5] - 3:21, 10:15, 25:13, 35:10, 67:3
**follow** [2] - 3:23, 13:11
**FOR** [1] - 1:2
**foregoing** [1] - 68:9
**forget** [1] - 18:5
**form** [3] - 22:11, 22:12, 52:7
**forum** [1] - 22:14
**forward** [2] - 44:9, 67:2
**four** [4] - 29:6, 30:13, 32:19, 38:6
**FRE** [1] - 34:8
**free** [1] - 18:18
**Front** [1] - 48:1
**front** [5] - 20:14, 40:12, 42:17, 43:11, 62:24
**full** [3] - 13:4, 56:5, 65:3
**fully** [2] - 25:18, 42:22
**fundamental** [1] - 9:20
**furtherance** [1] - 35:22
**fuse** [1] - 11:9
**game** [5] - 15:13, 17:5, 20:22, 22:18, 24:12
**general** [1] - 26:2
**glasses** [1] - 33:21
**glossary** [7] - 30:19, 30:20, 31:5, 31:6, 32:12, 32:13, 32:15
**GOLDEN** [4] - 2:6, 26:12, 26:19, 28:6
**golden** [3] - 26:14, 28:19, 29:20
**Goldman** [1] - 3:16
**govern** [1] - 23:9
**grant** [5] - 10:13, 11:2, 18:11, 19:10, 24:3
**granted** [2] - 18:22, 27:9
**granting** [3] - 26:5, 37:13, 42:5
**grasp** [1] - 65:23
**great** [1] - 59:7
**ground** [1] - 29:21
**grounds** [1] - 32:23
**guess** [4] - 14:5, 16:20, 33:18, 63:5
**guys** [5] - 11:6, 16:9, 24:19, 42:15, 63:7

**half** [5] - 9:1, 9:2, 9:4, 38:20, 38:24
**hand** [2] - 52:15, 68:15
**hands** [2] - 17:8, 18:17
**happy** [4] - 10:3, 10:10, 23:6, 39:20
**hard** [3] - 33:19, 56:9, 65:22
**harm** [1] - 9:22
**Hawkins** [3] - 68:7, 68:19, 68:20
**hay** [1] - 24:19
**heads** [2] - 23:11, 61:15
**hear** [9] - 4:14, 12:23, 18:22, 42:5, 58:2, 58:4, 58:20, 59:11, 66:8
**heard** [3] - 18:15, 18:20, 36:19
**hearing** [3] - 4:6, 4:21, 29:5
**heat** [1] - 26:7
**help** [1] - 22:7
**helpful** [1] - 3:3
**hereby** [1] - 68:9
**hereunto** [1] - 68:14
**hesitate** [1] - 34:3
**HESS** [10] - 1:21, 21:22, 22:20, 23:14, 24:13, 35:2, 35:21, 36:3, 36:10, 36:21
**Hess** [5] - 3:11, 21:22, 22:15, 35:1, 37:5
**hidden** [1] - 64:24
**hiding** [1] - 64:22
**high** [2] - 21:6, 54:24
**history** [8] - 3:20, 14:18, 16:23, 19:10, 31:11, 31:12, 32:5
**hitting** [1] - 9:8
**hold** [1] - 52:22
**holding** [3] - 51:9, 52:6, 52:13
**holds** [1] - 18:1
**honor** [1] - 66:2
**Honor** [55] - 3:8, 4:9, 4:13, 6:15, 7:6, 7:11, 7:12, 8:9, 10:2, 11:12, 13:14, 13:20, 14:1, 15:1, 15:22, 16:1, 16:13, 18:24, 19:5, 26:12, 26:19, 28:24, 30:16, 30:22, 32:3, 32:19, 33:21, 33:23, 35:3, 37:9, 37:18, 37:24, 38:9, 38:15, 39:22, 40:12,

40:20, 41:1, 42:2, 42:11, 43:1, 46:8, 48:2, 48:22, 49:20, 50:23, 52:13, 53:1, 54:11, 55:11, 61:21, 62:1, 62:9, 62:20, 64:1
**Honor's** [3] - 31:9, 38:20, 41:20
**HONORABLE** [1] - 1:14
**hope** [1] - 42:14
**hopefully** [1] - 12:6
**HUFNAL** [17] - 2:5, 3:14, 4:11, 4:17, 6:15, 6:19, 8:8, 11:12, 11:21, 37:18, 37:23, 46:8, 47:10, 52:24, 60:4, 62:8, 62:19
**Hufnal** [15] - 3:13, 3:15, 6:16, 6:18, 8:7, 8:9, 11:11, 37:17, 43:2, 44:10, 46:7, 52:22, 59:23, 62:5, 63:19
**i.e** [1] - 54:2
**IBM** [3] - 26:22, 27:3, 63:7
**idea** [3] - 22:12, 36:1, 49:5
**identify** [1] - 46:15
**identifying** [1] - 44:3
**identity** [1] - 15:7
**IIS** [25] - 8:18, 8:20, 8:22, 39:5, 39:12, 39:17, 39:24, 40:18, 40:21, 40:23, 41:7, 41:12, 44:2, 44:16, 44:20, 45:10, 45:12, 46:13, 47:3, 47:20, 48:10, 49:6, 54:18, 60:6, 60:21
**impact** [1] - 12:21
**impermissible** [1] - 32:22
**implemented** [1] - 55:15
**implication** [1] - 16:11
**imply** [1] - 5:20
**import** [1] - 47:3
**important** [1] - 12:13
**impossible** [1] - 57:1
**IN** [2] - 1:1, 68:14
**incipient** [1] - 15:11
**include** [3] - 24:14, 28:9, 30:2
**included** [1] - 45:13
**includes** [1] - 44:7

**inconsistent** [2] - 22:4, 22:23
**incredibly** [1] - 50:11
**indirect** [6] - 39:10, 60:18, 60:19, 61:2, 62:20, 62:22
**inducement** [1] - 57:3
**inflicted** [1] - 9:22
**information** [6] - 7:18, 8:3, 28:9, 29:9, 29:13, 53:22
**InfoSpinner** [1] - 17:7
**infringe** [6] - 41:15, 49:3, 49:7, 49:12, 58:24, 59:1
**Infringement** [1] - 40:16
**infringement** [48] - 27:12, 27:22, 39:3, 39:9, 39:10, 39:15, 39:18, 39:23, 40:6, 40:10, 40:17, 40:21, 41:6, 41:21, 44:7, 44:11, 45:19, 45:24, 46:2, 46:11, 46:12, 46:16, 46:21, 47:6, 48:10, 48:18, 49:15, 50:13, 54:1, 54:2, 54:7, 55:6, 56:16, 57:4, 57:10, 58:20, 59:9, 59:19, 60:8, 60:19, 61:1, 61:2, 61:6, 61:9, 62:20, 62:22, 65:9, 65:18
**infringer** [2] - 60:17, 60:18
**infringes** [2] - 43:4, 43:24
**infringing** [3] - 34:17, 41:10, 54:18
**initial** [1] - 35:2
**inner** [2] - 23:9, 24:4
**inquires** [1] - 14:10
**inquiry** [1] - 15:5
**installed** [3] - 40:22, 40:23, 50:2
**instead** [1] - 59:23
**instigated** [1] - 19:18
**instruct** [1] - 21:15
**instruction** [3] - 4:2, 4:22, 45:12
**instructions** [6] - 5:12, 6:5, 23:15, 30:18, 30:21, 48:7
**intelligent** [1] - 9:2
**intend** [1] - 3:22
**intending** [1] - 27:5
**intends** [1] - 34:5
**inter** [1] - 31:11

**16:18, 17:24, 18:3, 18:6, 25:5**
**interim** [1] - 38:8
**internal** [1] - 41:8
**internally** [2] - 39:22, 40:23
**interrogatories** [1] - 66:17
**interrogatory** [2] - 33:7, 37:10
**interrupt** [1] - 30:16
**intricately** [1] - 56:24
**introducing** [1] - 41:23
**introduction** [1] - 44:5
**introductions** [1] - 3:4
**invalidation** [1] - 33:11
**invalidity** [1] - 20:13
**investor** [2] - 14:2, 15:16
**IPR** [8] - 21:16, 22:3, 22:23, 23:2, 24:11, 25:1, 31:12, 31:22
**IPR's** [1] - 20:8
**Isaacson** [3] - 8:19, 27:6, 38:16
**Isaacson's** [1] - 58:5
**issue** [18] - 8:12, 15:7, 15:16, 16:19, 17:1, 17:2, 18:13, 18:21, 19:24, 23:3, 23:15, 30:18, 30:24, 32:9, 34:19, 36:7, 36:22, 41:18
**issued** [3] - 12:3, 33:11, 33:12
**issues** [8] - 4:2, 7:15, 14:18, 14:24, 16:22, 19:23, 20:24, 61:14
**itself** [3] - 23:3, 55:8, 65:17
**JASON** [1] - 2:4
**Jason** [2] - 3:16, 19:4
**JOHN** [1] - 1:21
**John** [2] - 3:11, 7:6
**joint** [1] - 26:22
**jointly** [1] - 5:1
**Jones** [4] - 44:24, 49:13, 51:18, 54:14
**Jones'** [3] - 43:21, 53:6, 58:24
**JORDAN** [1] - 1:14
**JUANITA** [1] - 2:4
**Juanita** [1] - 3:15
**judge** [1] - 20:6
**Judge** [5] - 25:15, 26:17, 26:24, 28:12, 29:3
**judgment** [13] - 27:12,

38:10, 41:17, 43:10, 49:1, 49:8, 49:19, 55:5, 61:12, 63:13, 65:3, 65:8, 66:12
**judicial** [2] - 22:10, 22:16
**jump** [2] - 29:20, 49:12
**jury** [26] - 4:2, 4:22, 4:23, 5:12, 5:15, 5:18, 6:5, 14:5, 16:6, 16:15, 17:10, 18:22, 20:10, 21:15, 23:8, 23:15, 23:16, 24:1, 25:21, 31:13, 31:15, 32:6, 38:14, 40:12, 58:8, 62:24
**Justin's** [1] - 52:18
**keep** [1] - 23:10
**keeping** [1] - 36:24
**KENT** [1] - 1:14
**Kevin** [2] - 3:11, 21:22
**KEVIN** [1] - 1:21
**kicking** [1] - 26:2
**kind** [10] - 3:23, 9:12, 10:16, 10:24, 12:13, 13:7, 25:4, 46:10, 48:3, 62:14
**King** [1] - 1:12
**Knorr** [1] - 25:9
**Knorr-Bremse** [1] - 25:9
**knowing** [1] - 26:3
**known** [2] - 41:18, 65:5
**knows** [1] - 14:6
**Kraman** [2] - 3:5, 3:8
**KRAMAN** [4] - 1:17, 3:7, 52:12, 52:20
**lack** [3] - 11:14, 23:22, 23:23
**laid** [2] - 40:5, 62:14
**language** [3] - 44:4, 46:11, 46:14
**large** [1] - 50:13
**last** [5] - 37:20, 41:5, 42:19, 62:3, 67:5
**late** [2] - 27:20, 41:24
**laughed** [1] - 56:22
**law** [1] - 41:17
**lawsuit** [1] - 37:3
**lawyers** [3] - 11:7, 66:4
**learn** [1] - 40:9
**least** [1] - 12:10
**leave** [11] - 6:12, 7:13, 10:8, 11:3, 11:15, 27:9, 28:7, 28:8, 32:12, 37:19, 51:1
**left** [4] - 13:8, 27:3,

43:13, 66:15
**legal** [1] - 23:12
**length** [1] - 54:5
**less** [1] - 14:11
**lettered** [1] - 51:16
**level** [1] - 54:24
**liability** [1] - 34:10
**LICENSING** [1] - 1:3
**licensing** [1] - 15:10
**light** [3] - 39:1, 41:19
**likely** [1] - 14:11
**limine** [21] - 4:3, 6:10, 14:4, 14:9, 18:11, 19:2, 24:3, 26:10, 30:5, 30:10, 32:19, 37:20, 38:4, 38:6, 38:21, 41:22, 42:6, 43:12, 62:16, 62:18, 64:14
**limines** [1] - 13:16
**limit** [1] - 12:21
**limitations** [1] - 61:4
**limited** [1] - 36:4
**line** [1] - 11:23
**listen** [1] - 16:10
**litigated** [1] - 20:24
**litigation** [3] - 16:7, 35:13, 35:17
**LLC** [1] - 1:3
**load** [2] - 9:2, 65:12
**located** [1] - 53:20
**logical** [1] - 55:19
**look** [11] - 5:1, 11:19, 34:6, 45:4, 50:7, 52:13, 63:6, 66:10, 66:24, 67:2
**looked** [3] - 5:13, 7:17, 66:9
**looking** [2] - 51:6, 52:21
**looks** [1] - 66:3
**machine** [8] - 45:6, 45:9, 45:11, 47:12, 47:15, 47:20, 48:5, 48:13
**magic** [1] - 57:18
**Magistrate** [1] - 28:11
**mail** [4] - 32:21, 33:17, 34:7, 37:14
**main** [3] - 16:14, 21:24, 28:12
**mapping** [1] - 33:24
**March** [3] - 1:10, 68:11, 68:15
**mark** [1] - 51:18
**marked** [2] - 34:8, 52:16
**marking** [1] - 36:12
**MARTINA** [1] - 2:5
**Martina** [3] -

6:16, 8:9
**matter** [6] - 16:17, 26:16, 35:3, 41:17, 57:19, 68:12
**matters** [4] - 4:5, 4:22, 23:8, 57:9
**McKOOL** [1] - 1:19
**mean** [7] - 11:23, 12:2, 25:12, 29:11, 45:21, 55:18, 56:5
**meaning** [1] - 43:6
**meaningfully** [2] - 22:8, 65:20
**meaningless** [1] - 18:21
**means** [1] - 43:16
**media** [4] - 47:12, 47:20, 48:14, 50:6
**medium** [4] - 42:24, 45:9, 45:11, 56:18
**mediums** [1] - 48:6
**meet** [4] - 27:17, 38:10, 61:3, 63:2
**meets** [1] - 23:7
**Merit** [1] - 68:7
**merits** [1] - 43:9
**method** [2] - 50:4, 56:16
**methodology** [7] - 7:21, 8:12, 8:14, 9:14, 10:4, 11:13, 29:7
**methods** [1] - 39:12
**Microsoft** [55] - 3:13, 3:17, 5:3, 5:7, 6:14, 9:16, 10:14, 16:1, 21:9, 25:2, 25:23, 26:10, 27:1, 28:1, 28:13, 28:24, 33:8, 33:9, 37:1, 37:3, 37:18, 39:4, 39:11, 39:16, 39:23, 40:11, 40:24, 41:7, 41:10, 43:24, 44:14, 44:15, 44:20, 45:5, 45:10, 45:14, 46:13, 47:21, 48:8, 48:15, 50:1, 53:15, 53:19, 53:23, 54:3, 54:16, 54:17, 55:8, 56:1, 56:7, 56:19, 58:19, 64:7
**MICROSOFT** [1] - 1:6
**Microsoft's** [17] - 5:17, 6:12, 7:17, 7:23, 10:20, 11:1, 19:1, 22:1, 30:13, 34:1, 39:16, 40:7, 48:24, 49:15, 51:1, 51:3, 60:6
**might** [9] - 6:24,

10:21, 23:19, 26:7, 29:19
**MIL** [5] - 6:22, 22:1, 40:5, 51:1, 62:12
**mind** [1] - 5:11
**minute** [1] - 50:16
**mischief** [1] - 34:21
**missing** [1] - 4:1
**misunderstanding** [1] - 58:3
**moment** [3] - 3:4, 35:18, 52:22
**Monday** [1] - 1:10
**money** [2] - 28:2, 54:19
**month** [1] - 12:5
**moot** [1] - 38:21
**morning** [2] - 3:22, 25:5
**morphing** [1] - 50:12
**most** [1] - 29:19
**motion** [43] - 4:12, 4:18, 6:12, 6:20, 6:22, 7:8, 10:8, 10:13, 11:24, 12:9, 13:4, 14:4, 14:9, 18:11, 19:2, 24:3, 26:5, 26:10, 27:5, 27:9, 27:11, 29:16, 30:1, 30:10, 32:19, 37:13, 37:19, 38:1, 38:21, 41:22, 42:5, 43:11, 48:24, 49:8, 51:1, 62:15, 62:18, 63:13, 64:14, 66:12
**motions** [5] - 4:3, 6:10, 29:4, 38:4, 38:6
**move** [2] - 47:8, 49:4
**moved** [3] - 38:7, 41:16, 47:8
**moving** [1] - 12:6
**MR** [52] - 4:8, 7:5, 7:11, 10:2, 10:22, 12:16, 13:14, 13:19, 13:23, 14:1, 15:1, 19:4, 21:22, 22:20, 23:14, 24:13, 26:12, 26:19, 28:6, 32:3, 35:2, 35:21, 36:3, 36:10, 36:21, 42:10, 42:18, 43:20, 50:22, 51:7, 51:11, 51:13, 51:19, 51:21, 52:3, 52:17, 53:4, 53:9, 54:11, 54:21, 55:10, 55:14, 56:11, 58:14, 58:15, 59:3, 59:14, 61:5, 61:20, 64:1, 64:16, 64:20

**MS** [35] - 3:7, 3:14, 4:11, 4:17, 6:15, 6:19, 8:8, 11:12, 11:21, 15:22, 15:24, 16:13, 16:22, 17:13, 17:18, 17:23, 18:8, 18:23, 28:22, 30:15, 31:8, 32:18, 33:20, 37:9, 37:18, 37:23, 46:8, 47:10, 52:12, 52:20, 52:24, 60:4, 62:1, 62:8, 62:19
**multiple** [1] - 49:14
**multiplication** [1] - 9:9
**multiplier** [3] - 8:18, 8:21, 9:6
**mutually** [1] - 56:14
**narrowing** [1] - 23:2
**nature** [1] - 42:20
**NDA** [1] - 33:4
**necessarily** [3] - 42:22, 55:11, 55:14
**necessary** [6] - 6:3, 7:24, 11:5
**need** [5] - 5:22, 33:21, 43:19, 50:7, 59:22
**needed** [1] - 5:14
**needs** [1] - 10:24
**negotiations** [1] - 35:23
**Networks** [31] - 3:22, 5:3, 7:7, 10:18, 11:4, 13:17, 14:2, 14:20, 15:9, 15:10, 15:18, 17:3, 17:9, 17:17, 17:19, 18:4, 18:5, 18:7, 21:21, 25:4, 25:24, 28:21, 28:23, 33:2, 34:5, 37:2, 38:11, 38:17, 49:9, 63:8, 63:23
**NETWORKS** [1] - 1:3
**Networks'** [1] - 4:17
**Networks's** [1] - 49:13
**never** [6] - 40:2, 48:14, 49:10, 60:10, 60:20
**New** [1] - 68:2
**new** [8] - 9:11, 9:14, 9:19, 11:19, 34:16, 38:23, 41:19
**news** [1] - 11:6
**next** [3] - 41:1, 48:2, 48:3
**nine** [2] - 5:23, 6:1
**NITIKA** [1] - 2:5
**Nitika** [1] - 3:16
**nobody** [2] - 22:16, 55:18
**nondisclosure** [1] - 32:23

**none** [2] - 35:9, 55:22
**Notary** [1] - 68:8
**notes** [1] - 68:11
**nothing** [14] - 13:8, 18:20, 19:14, 26:6, 46:19, 46:24, 50:20, 56:6, 56:8, 61:20, 62:2, 64:22, 64:24
**notice** [16] - 33:14, 36:11, 36:13, 36:15, 36:22, 36:23, 37:7, 37:15, 47:17, 49:18, 49:19, 50:8, 58:21, 60:20, 62:13, 62:15
**number** [9] - 9:1, 25:2, 26:10, 28:3, 30:13, 38:18, 42:6, 55:22, 62:24
**numbering** [1] - 52:19
**numbers** [9] - 8:13, 9:8, 9:13, 11:15, 29:14, 33:10, 40:12, 43:16, 50:14
**oath** [2] - 24:8, 24:17
**object** [1] - 31:13
**objected** [2] - 30:19, 30:21
**objection** [3] - 10:10, 31:3, 31:20
**obviousness** [2] - 15:4, 17:1
**October** [2] - 26:20, 29:2
**OF** [2] - 1:2, 68:5
**offering** [2] - 54:16, 55:6
**office** [2] - 20:20, 21:10
**officer** [2] - 64:17, 64:21
**once** [2] - 15:3, 65:15
**one** [24] - 3:18, 4:11, 13:17, 18:22, 19:13, 20:6, 22:11, 26:11, 30:18, 30:23, 32:23, 34:18, 39:7, 41:11, 42:4, 43:2, 43:3, 49:20, 51:15, 52:1, 59:15, 60:14, 60:23
**one-page** [1] - 52:1
**ongoing** [1] - 35:13
**open** [1] - 27:4
**opened** [3] - 25:16, 26:1, 26:8
**opening** [2] - 9:21, 25:13
**opens** [1] - 34:13
**operating** [2] - 49:2, 65:12
**operation** [1] - 44:1

**opined** [2] - 56:19, 57:24
**opinion** [3] - 9:11, 12:3, 38:23
**Opinions** [1] - 52:2
**opinions** [1] - 25:11
**opportunity** [1] - 27:10, 38:22, 62:11
**opposed** [1] - 36:11
**opposition** [9] - 6:12, 6:20, 7:2, 32:20, 40:5, 41:3, 50:24, 51:8, 62:15
**Oracle** [3] - 19:12, 19:22, 20:6
**order** [4] - 7:1, 38:5, 38:8, 57:19
**ordinary** [1] - 43:5
**original** [2] - 7:18, 7:19
**originally** [1] - 33:10
**otherwise** [4] - 14:7, 32:15, 54:6, 58:17
**ought** [2] - 16:20, 23:5
**outcome** [3] - 21:5, 23:24, 24:12
**outcomes** [1] - 19:9
**outside** [3] - 4:5, 27:15, 29:9
**outstanding** [1] - 4:12
**overly** [2] - 5:5, 5:9
**own** [10] - 7:17, 7:23, 17:12, 18:4, 21:10, 24:9, 27:13, 44:22, 49:3, 50:7
**owner** [1] - 15:8
**owners** [1] - 15:6
**ownership** [8] - 14:17, 14:22, 16:18, 17:24, 18:3, 18:6, 18:16
**owns** [5] - 17:13, 17:15, 17:16, 17:19
**P.C** [1] - 1:19
**p.m** [2] - 1:10, 67:8
**packaged** [1] - 50:1
**page** [10] - 5:16, 5:23, 6:1, 7:7, 42:21, 44:11, 48:2, 48:4, 48:11, 52:1
**pages** [4] - 5:15, 29:7, 46:17
**papers** [3] - 7:12, 25:14, 66:1
**Parabellum** [8] - 14:6, 15:17, 16:19, 17:12, 17:16, 18:1, 18:6, 18:18
**paragraph** [9] - 33:22, 41:5, 41:6, 43:22, 46:9, 47:10, 47:19, 47:19

**paragraphs** [2] - 41:1, 53:10
**Parallel** [43] - 3:22, 4:17, 5:3, 7:6, 9:23, 10:18, 11:4, 13:17, 14:1, 14:20, 15:8, 15:10, 15:18, 16:2, 17:3, 17:9, 17:17, 17:19, 18:4, 18:5, 18:7, 19:8, 20:15, 20:19, 21:8, 21:20, 23:1, 25:4, 25:24, 26:23, 28:21, 28:23, 30:19, 33:2, 34:5, 37:2, 38:3, 38:11, 38:17, 49:9, 49:13, 63:8, 63:23
**PARALLEL** [1] - 1:3
**Parallel's** [3] - 27:21, 39:2, 41:2
**part** [4] - 33:20, 42:4, 44:10, 65:17
**particular** [1] - 35:18
**particularly** [1] - 53:5
**parties** [10] - 16:16, 23:10, 24:4, 26:22, 27:4, 31:12, 54:17, 56:4, 56:20, 58:11
**parties'** [1] - 22:4
**parts** [1] - 31:3
**party** [2] - 55:7, 55:23
**passing** [1] - 26:23
**past** [1] - 14:22
**patent** [6] - 16:8, 16:24, 20:20, 21:10, 32:5, 33:10
**patents** [16] - 8:2, 14:19, 14:21, 17:8, 17:12, 17:14, 17:20, 17:24, 18:1, 18:5, 18:16, 19:24, 33:14, 34:19, 36:13, 50:3
**patents-in-suit** [1] - 14:19
**pattern** [1] - 3:23
**pay** [1] - 56:7
**paying** [1] - 42:16
**people** [6] - 12:20, 22:11, 25:4, 63:24, 64:8, 67:4
**percent** [1] - 8:24
**percentage** [3] - 8:18, 8:19, 17:14
**perfectly** [1] - 18:18
**perhaps** [3] - 36:17, 58:14
**period** [1] - 10:6
**permit** [1] - 29:16
**persuasive** [2] -

18:12, 23:19, 23:20
**pertinent** [1] - 14:11
**petitions** [2] - 19:18, 19:19
**phrases** [2] - 46:20, 47:2
**picked** [2] - 7:2, 31:2
**piece** [3] - 43:2, 43:3, 67:5
**PILAR** [1] - 1:17
**Pilar** [1] - 3:8
**place** [3] - 31:18, 32:24, 33:1
**places** [2] - 44:21, 45:17
**placing** [3] - 45:1, 45:18, 46:1
**plain** [1] - 43:5
**Plaintiff** [2] - 1:4, 1:22
**plaintiff** [3] - 3:8, 12:14, 21:23
**plaintiffs** [1] - 3:6
**planning** [1] - 12:7
**plate** [1] - 47:1
**plenty** [1] - 65:4
**plus** [1] - 60:16
**PNL** [1] - 7:3
**point** [15] - 5:22, 10:17, 15:13, 21:9, 32:11, 36:6, 36:10, 42:19, 43:1, 44:12, 46:4, 49:20, 53:12, 54:22, 65:24
**pointed** [1] - 28:24
**pointing** [3] - 31:1, 66:13, 66:15
**portfolios** [1] - 16:8
**portions** [1] - 54:23
**position** [3] - 22:4, 39:2, 48:23
**possibly** [2] - 43:4, 55:3
**post** [1] - 19:10
**practicing** [1] - 14:21
**preamble** [1] - 42:23
**preclude** [1] - 41:23
**predecessors** [1] - 17:4
**prejudice** [3] - 9:15, 16:3, 30:11
**prejudicial** [4] - 14:14, 21:18, 24:2, 27:24
**preliminary** [3] - 5:12, 30:17, 30:21
**premise** [1] - 22:22
**preparation** [1] - 13:9
**prepare** [1] - 5:10
**preparing** [1] - 62:8
**present** [1] - 14:22

**pretrial** [3] - 9:16, 38:5, 38:8
**pretty** [5] - 12:13, 23:16, 36:1, 56:9, 59:5
**prevent** [2] - 18:14, 18:15
**previous** [1] - 15:6
**previously** [2] - 28:8, 40:22
**probability** [1] - 21:6
**probative** [1] - 24:3
**problem** [5] - 21:24, 22:15, 24:1, 32:14, 37:14
**proceeding** [2] - 20:5, 23:17, 23:21
**proceedings** [4] - 19:11, 19:14, 20:1, 20:2
**process** [1] - 9:14
**produce** [1] - 28:13
**product** [2] - 44:8, 58:19
**production** [1] - 66:20
**products** [4] - 41:13, 44:5, 45:10, 51:4
**proffered** [1] - 20:21
**profit** [1] - 8:1
**prohibit** [1] - 15:5
**prohibited** [2] - 33:3, 34:20
**promptly** [1] - 67:4
**prong** [1] - 14:13
**proof** [1] - 57:10
**proposed** [1] - 30:20
**proposition** [1] - 26:3
**prosecution** [2] - 32:5
**protected** [1] - 34:10
**prove** [2] - 35:4, 36:4
**provide** [1] - 10:16
**provided** [3] - 49:14, 53:13, 60:11
**providing** [2] - 60:6, 60:24
**PTAB** [3] - 20:12, 23:2, 23:20
**Public** [1] - 68:9
**Puerto** [1] - 41:12
**pull** [1] - 43:15
**purposes** [1] - 36:17
**put** [15] - 20:17, 27:11, 36:8, 38:6, 42:19, 43:13, 48:10, 49:7, 49:17, 57:21, 57:22, 60:20, 61:3, 62:12, 62:23
**puts** [1] - 10:13
**putting** [2] - 36:7, 38:19

Quan [2] - 3:17, 32:22
Quan's [1] - 34:14
questionable [1] -
15:3
questioning [1] - 9:13
questionnaire [1] -
4:23
questions [6] - 4:24,
5:2, 5:8, 10:3, 26:4,
66:18
raise [2] - 21:9, 21:11
raised [3] - 8:13,
49:17, 49:18
ramping [1] - 12:21
rationale [1] - 9:10
reach [4] - 14:13,
15:7, 21:15, 37:2
read [5] - 7:12, 18:20,
19:6, 22:6, 43:6
readable [12] - 39:13,
42:24, 45:7, 45:9,
45:11, 47:12, 47:15,
47:20, 48:6, 48:14,
50:5, 56:17
reading [1] - 33:21
ready [3] - 9:16, 11:10,
26:14
real [1] - 16:15
realize [1] - 11:8
really [13] - 6:6, 9:11,
9:22, 16:14, 17:5,
23:8, 25:6, 43:9,
46:4, 47:17, 56:2,
56:6, 64:23
reason [5] - 21:12,
31:24, 35:18, 38:7
reasons [1] - 34:21
rebut [1] - 14:22
rebuttal [1] - 17:20
recess [1] - 67:7
recessed [1] - 67:8
recognize [1] - 38:5
recognizes [1] - 29:5
recollection [1] - 50:6
record [2] - 61:17,
68:9
Redmond [3] - 45:14,
47:4, 47:23
reexamination [11] -
19:9, 19:13, 20:1,
20:2, 20:5, 21:5,
31:10, 31:11, 31:23,
32:1, 32:4
reexamine [2] - 32:9,
32:11
refer [1] - 28:17
reference [2] - 22:2,
32:11
referenced [1] - 44:10
references [1] - 32:8

regarding [1] - 22:3,
31:10
regards [1] - 50:23
Registered [1] - 68:7
regurgitates [2] -
45:6, 45:7
reiterated [1] - 5:23
relate [1] - 47:16
related [5] - 9:4,
26:24, 38:13, 53:13,
56:24
relatively [1] - 11:8
relevance [3] - 15:3,
16:3, 16:14
relevant [14] - 14:18,
14:22, 15:14, 15:15,
16:2, 18:13, 20:17,
27:23, 32:1, 32:4,
32:6, 39:2, 40:6,
57:15
rely [1] - 7:16
relying [1] - 47:14
remembering [1] -
47:5
replace [1] - 8:3
reply [1] - 63:19
report [38] - 4:13,
4:18, 6:21, 7:9, 7:14,
7:18, 7:19, 9:21,
10:7, 27:20, 27:21,
28:5, 28:9, 28:16,
28:17, 29:1, 29:6,
29:15, 29:23, 39:20,
40:14, 40:15, 43:21,
44:5, 45:22, 47:7,
47:15, 48:6, 50:9,
51:2, 51:17, 53:7,
54:23, 55:21, 58:5,
62:22, 63:4, 65:20
REPORTER [1] - 68:5
Reporter [2] - 68:8
reports [2] - 10:9,
46:18, 66:21
Request [1] - 44:21
request [5] - 11:2,
11:15, 28:15, 34:2,
66:20
requested [1] - 4:23
requests [1] - 48:8
requirement [1] -
36:12
respect [2] - 17:3,
29:22, 30:1
respond [7] - 19:7,
27:10, 42:8, 46:24,
47:18, 50:18, 59:22
responding [1] -
15:21
responds [1] - 33:9
response [15] - 10:1,

11:1, 14:17, 33:7,
34:14, 34:15, 37:10,
38:3, 43:14, 49:9,
52:5, 60:2, 66:11,
66:16, 66:18, 66:19
responses [1] - 38:12
responsive [1] - 63:17
rest [2] - 31:16, 31:20
restrain [1] - 64:4
restraints [1] - 8:10
result [2] - 38:17,
40:11
revenue [6] - 8:1,
8:16, 8:21, 38:13,
38:18, 62:24
review [3] - 23:10,
24:5, 31:12
RICHARDSON [1] -
2:3
Rico [1] - 41:12
ridiculous [1] - 59:6
RMR [1] - 68:20
road [1] - 26:2
Robinson [3] - 26:17,
26:24, 29:3
RONALD [1] - 2:6
Ronald [1] - 3:16
rooted [1] - 11:20
route [1] - 48:8
Routing [1] - 44:21
routing [1] - 34:2
Rule [5] - 14:9, 33:2,
35:3, 36:4, 36:7
ruled [5] - 29:3, 38:9,
38:15, 55:4, 62:20
rules [2] - 23:9, 34:20
ruling [9] - 22:24,
27:3, 29:22, 30:4,
31:9, 38:20, 43:14,
66:24, 67:4
rulings [1] - 5:11
run [1] - 37:16
running [1] - 49:6

sale [3] - 51:3, 60:6,
60:10
sales [9] - 27:15,
27:22, 29:8, 29:9,
44:1, 57:3, 57:24,
58:19, 59:13
satisfy [1] - 50:2
saw [1] - 5:13
schedule [4] - 10:16,
12:18, 13:3, 63:9
scope [1] - 22:3
seal [1] - 68:15
seated [2] - 3:2, 25:8
second [5] - 6:2,
14:13, 33:20, 33:22,
38:20

section [4] - 40:15,
41:6, 44:12, 51:2
Section [3] - 25:10,
51:22, 53:6
see [4] - 6:6, 6:7,
18:13, 22:16, 32:14,
52:9, 60:1, 64:6
seeing [3] - 13:5,
22:14, 61:15
seeking [1] - 7:13
seeks [1] - 14:4
self [1] - 9:22
sell [4] - 56:4, 57:20,
60:13
selling [8] - 54:16,
56:20, 59:1, 59:4,
59:18, 60:17, 60:24,
61:8
send [1] - 65:13
sense [4] - 17:5,
58:17, 63:16, 65:20
sent [2] - 34:17, 55:15
sentence [2] - 40:19,
43:23
separate [5] - 39:6,
41:13, 57:2, 59:19,
60:6
separately [1] - 60:18
September [1] - 29:1
sequence [1] - 48:7
sequences [1] - 45:12
serve [2] - 28:7, 53:20
server [11] - 40:11,
41:11, 41:12, 46:1,
47:21, 47:23, 49:11,
55:8, 57:2, 57:21,
60:21
Server [12] - 29:9,
38:14, 40:7, 40:11,
41:20, 43:15, 44:1,
45:13, 46:22, 49:2,
49:6, 49:24
Servers [1] - 53:12
servers [14] - 39:6,
40:21, 44:22, 45:2,
45:19, 48:12, 48:17,
53:15, 53:19, 53:24,
54:17, 56:22, 57:23,
59:8
services [2] - 55:6,
55:23
set [4] - 13:4, 38:3,
49:1, 68:14
settlement [1] - 35:22
seven [3] - 8:11, 9:19,
10:5
several [1] - 39:8
shake [1] - 61:15
share [3] - 17:17,
17:18, 52:14

shareholder [4] -
14:3, 15:8, 16:7,
18:19
sheet [2] - 3:3, 5:11
shelf [2] - 60:14
shelves [1] - 48:15
shield [2] - 22:7, 22:15
shifted [2] - 27:8,
29:21
shoot [1] - 30:8
short [2] - 11:9, 33:17
Shorthand [1] - 68:8
shot [1] - 11:20
show [5] - 16:15, 33:5,
34:10, 36:13, 39:20
showed [2] - 46:10,
47:19
showing [1] - 47:13
showings [1] - 14:23
shown [1] - 16:2
shows [2] - 21:5,
66:14
side [3] - 20:21, 25:20
side-bar [2] - 25:20
sign [1] - 3:3
sign-in [1] - 3:3
significant [3] - 8:10,
9:15, 29:19
similar [1] - 9:8
simple [1] - 14:8
simply [1] - 39:4
sit [1] - 12:11
sitting [1] - 48:15
situation [1] - 9:12
six [1] - 5:8
skip [1] - 44:18
SMITH [1] - 1:19
smoke [1] - 64:6
software [10] - 39:13,
43:7, 44:13, 45:10,
50:4, 53:17, 57:8,
57:9, 57:13, 57:20
sold [5] - 54:2, 56:1,
56:8, 57:13, 57:20
somewhat [1] - 27:2
sorry [2] - 19:23, 52:3
sort [7] - 22:9, 26:23,
27:2, 27:3, 56:21,
64:11, 64:12
sos [1] - 61:16
sound [1] - 29:11
speaking [3] - 6:13,
13:22, 28:20
specific [2] - 31:7,
35:16
specifically [3] - 34:7,
43:12, 54:23
spent [1] - 3:21
split [1] - 61:6

**squared** [1] - 12:23
**Stacy** [1] - 3:17
**stand** [2] - 37:6, 56:19
**STARGATT** [1] - 1:16
**start** [7] - 3:5, 4:1, 4:21, 5:3, 13:16, 16:20, 47:12
**started** [1] - 54:9
**starts** [1] - 8:16
**State** [1] - 68:1
**state** [1] - 41:11
**statement** [4] - 39:21, 44:17, 47:6, 48:14
**statements** [9] - 20:20, 20:23, 22:3, 22:23, 24:6, 24:14, 47:24, 48:3, 49:4
**STATES** [1] - 1:1
**States** [2] - 49:24, 53:18
**states** [1] - 44:20
**status** [1] - 26:22
**statute** [1] - 36:12
**statutory** [1] - 46:10
**stay** [3] - 25:7, 37:4, 50:15
**stem** [1] - 57:24
**stenographic** [1] - 68:10
**step** [1] - 39:7
**still** [23] - 10:5, 12:20, 17:1, 17:2, 17:4, 17:23, 32:9, 39:2, 40:9, 55:8, 57:7, 57:12, 57:15, 57:16, 57:17, 58:7, 58:8, 58:12, 58:18, 66:6, 67:6
**Stone** [2] - 19:11, 19:16
**stop** [2] - 17:5, 17:9
**stored** [3] - 45:11, 53:23
**storing** [1] - 53:14
**story** [3] - 17:6, 26:18, 26:20
**straight** [2] - 16:5, 23:10
**Street** [1] - 1:12
**strong** [2] - 31:20, 56:13
**stuff** [9] - 21:13, 30:7, 31:22, 55:7, 55:15, 56:4, 65:5, 66:14, 66:16
**subject** [2] - 19:24, 28:12
**submit** [1] - 51:1
**substance** [3] - 5:21, 42:7, 42:9

**substantive** [1] - 38:2
**substantively** [1] - 63:15
**success** [4] - 14:23, 15:2, 17:1, 17:2
**successful** [1] - 15:12
**suggested** [1] - 5:23
**suit** [1] - 14:19
**summary** [13] - 27:11, 38:9, 41:17, 43:10, 49:1, 49:8, 49:18, 55:4, 61:12, 63:13, 65:3, 65:7, 66:11
**Summary** [1] - 52:1
**supplement** [8] - 4:12, 4:18, 6:13, 6:21, 7:8, 10:9, 29:23, 62:21
**supplemental** [6] - 7:14, 10:6, 10:24, 28:16, 29:6, 63:3
**support** [5] - 11:14, 39:17, 41:3, 46:13, 48:22, 48:24, 50:20, 55:20, 55:21
**supposed** [2] - 12:11, 38:4
**supposedly** [1] - 55:24
**surely** [1] - 62:23
**surprise** [3] - 25:3, 48:23, 65:24
**surprised** [3] - 38:12, 40:9, 45:21
**survey** [10] - 7:16, 7:21, 8:4, 8:19, 27:6, 38:16, 57:5, 57:6, 57:9, 57:11
**suspicious** [5] - 63:23, 63:24, 64:5, 64:17, 66:1
**swallow** [1] - 56:10
**switching** [1] - 8:13
**sword** [2] - 22:7, 22:15
**system** [7] - 21:11, 21:12, 48:11, 48:13, 49:2, 57:22, 65:14
**systems** [1] - 48:8
**table** [3] - 3:9, 37:6, 61:14
**TAYLOR** [1] - 1:16
**teases** [1] - 59:16
**technical** [4] - 9:18, 23:12, 27:13, 49:22
**technologically** [1] - 52:9
**technology** [2] - 9:5, 29:10
**teed** [2] - 3:24, 65:5
**ten** [1] - 5:8

**terminated** [3] - 19:18, 20:3, 21:2
**terms** [3] - 31:19, 32:15, 47:11
**tested** [1] - 39:22
**testimony** [3] - 7:8, 14:10, 29:3
**testing** [2] - 39:24, 41:8
**Texas** [1] - 35:9
**THE** [88] - 1:1, 1:2, 1:14, 3:1, 3:12, 3:18, 4:10, 4:15, 4:20, 6:17, 6:24, 7:10, 8:5, 9:24, 10:12, 10:23, 11:17, 11:22, 12:17, 13:15, 13:21, 13:24, 14:15, 15:19, 15:23, 16:4, 16:17, 17:11, 17:15, 17:21, 18:2, 18:10, 19:1, 21:19, 22:6, 23:5, 23:22, 24:16, 26:13, 28:4, 28:18, 29:18, 31:1, 31:22, 32:10, 33:16, 34:23, 35:8, 35:24, 36:8, 36:16, 37:4, 37:12, 37:22, 42:3, 42:14, 43:8, 46:3, 46:23, 50:15, 51:5, 51:9, 51:12, 51:16, 51:20, 51:23, 52:6, 52:15, 52:21, 53:2, 53:8, 54:8, 54:12, 55:2, 55:12, 55:17, 58:2, 59:2, 59:10, 59:21, 61:10, 61:23, 62:3, 62:17, 63:5, 64:3, 64:19, 65:1
**theirs** [1] - 19:7
**themselves** [2] - 19:20, 65:16
**theories** [3] - 39:8, 40:18, 56:15
**theory** [30] - 8:14, 9:7, 9:9, 9:11, 29:12, 39:3, 40:1, 40:6, 40:10, 41:9, 41:24, 45:3, 46:18, 46:21, 48:19, 48:20, 49:5, 49:11, 50:12, 50:19, 54:10, 54:13, 57:8, 57:17, 59:12, 59:13, 60:19, 61:2, 62:13, 66:22
**thereof** [1] - 41:4
**thinks** [1] - 24:19
**thinly** [1] - 16:9
**third** [8] - 19:22, 20:4, 54:17, 55:7, 55:23, 56:4, 56:20, 58:11
**third-party** [1] - 55:23
**three** [5] - 19:8, 19:23, 26:11, 60:14, 63:18
**throughout** [2] - 39:9, 54:3
**throwing** [1] - 59:8
**thrown** [1] - 30:7
**timeliness** [3] - 8:9, 38:2, 63:15
**today** [8] - 3:21, 4:14, 38:20, 54:6, 61:14, 63:17, 64:13, 67:2
**together** [4] - 13:1, 35:12, 61:3, 65:12
**tomorrow** [1] - 13:12
**took** [1] - 3:4
**top** [1] - 34:7
**total** [5] - 8:16, 8:21, 38:13, 38:17, 62:24
**toward** [1] - 27:3
**town** [1] - 37:16
**track** [1] - 44:3
**transcript** [2] - 27:1, 68:10
**treating** [1] - 43:10
**trial** [10] - 6:7, 8:11, 9:17, 9:19, 11:10, 12:1, 12:11, 12:21, 13:8, 25:19
**trolls** [1] - 16:10
**troubling** [1] - 31:7
**true** [5] - 8:15, 45:8, 45:16, 48:23, 68:10
**truth** [1] - 15:15
**try** [3] - 23:8, 34:16, 64:12
**trying** [8] - 16:6, 16:12, 23:11, 28:2, 40:4, 43:15, 55:19, 62:23
**turn** [3] - 4:2, 12:11, 27:7
**turning** [1] - 13:16
**twice** [3] - 5:24, 6:2, 28:8
**two** [27] - 16:22, 19:15, 19:23, 20:1, 25:2, 31:3, 31:8, 31:21, 32:13, 32:23, 33:1, 38:8, 39:6, 41:1, 41:13, 43:22, 46:9, 47:10, 47:14, 48:16, 56:23, 59:19, 60:17, 61:7, 65:10, 65:13
**U.S.C.C.J** [1] - 1:14
**unable** [1] - 21:8
**under** [14] - 11:23, 24:17,

**underlined** [1] - 44:19
**understood** [1] - 24:13
**undoubtedly** [1] - 25:24
**undue** [1] - 31:18
**unduly** [2] - 14:14, 21:18
**unequivocally** [1] - 45:16
**unfair** [1] - 50:11
**unfairly** [2] - 24:20, 24:22
**unfortunately** [1] - 34:12
**UNITED** [1] - 1:1
**United** [2] - 49:23, 53:17
**Universal** [2] - 19:12, 19:17
**universe** [1] - 27:8
**unless** [5] - 5:19, 25:6, 37:1
**unreasonable** [1] - 29:11
**unrelated** [1] - 65:14
**untimely** [1] - 28:17
**up** [19] - 3:24, 5:24, 7:2, 12:18, 12:21, 16:23, 23:15, 25:16, 29:2, 30:5, 30:7, 31:2, 34:13, 37:6, 42:12, 42:19, 49:10, 61:7, 65:5
**US** [3] - 29:8, 29:9, 33:9
**user** [1] - 40:22
**uses** [3] - 8:24, 9:5, 41:7
**validity** [3] - 21:6, 35:5, 36:5
**value** [12] - 9:6, 56:20, 56:21, 58:9, 59:3, 59:4, 59:7, 59:17, 59:19, 59:20, 59:21
**veiled** [1] - 16:9
**version** [1] - 5:17
**vetted** [2] - 39:9, 39:14
**via** [1] - 41:7
**video** [1] - 31:18
**voir** [5] - 4:1, 4:21, 5:2, 5:10, 14:5
**Vorpahl** [2] - 3:10, 28:23
**VORPAHL** [2] - 1:20, 28:22

**wait** [1] - 6:7
**wants** [1] - 30:22
**Washington** [2] - 41:11, 47:4
**website** [2] - 40:24, 46:17
**websites** [5] - 39:17, 39:18, 41:5, 46:14, 48:1
**Wednesday** [1] - 13:2
**week** [4] - 13:1, 37:20, 63:17, 63:18
**weeks** [6] - 8:11, 9:19, 10:5, 12:4, 12:10, 12:20
**weighed** [1] - 23:3
**WHEREOF** [1] - 68:14
**whole** [1] - 40:15
**widget** [4] - 60:13, 60:14
**willfully** [1] - 34:17
**willfulness** [4] - 33:5, 34:6, 36:11, 36:17
**Wilmington** [2] - 1:12, 68:16
**win** [3] - 25:6, 66:6
**Window** [1] - 53:12
**Windows** [10] - 29:9, 38:14, 40:7, 41:20, 43:15, 44:1, 45:13, 46:22, 49:2, 49:24
**windows** [1] - 49:6
**WindowServer** [2] - 8:1
**witness** [4] - 14:7, 24:8, 25:23, 28:14
**WITNESS** [1] - 68:14
**WOLFF** [2] - 2:4, 19:4
**Wolff** [4] - 3:16, 19:3, 19:4, 21:19
**Wolff's** [1] - 23:7
**word** [3] - 41:9, 50:5, 56:14
**words** [5] - 24:9, 33:13, 53:23, 57:6, 62:7
**worry** [2] - 13:9, 64:9
**worth** [3] - 54:19, 56:3, 56:6
**write** [1] - 47:3
**writes** [1] - 44:20
**writing** [2] - 44:23, 45:1
**written** [3] - 20:11, 20:18, 21:1
**years** [1] - 17:8
**YOUNG** [1] - 1:16
**yourself** [1] - 64:4